# EXHIBIT C

1

<pre>
 1              IN THE UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF KANSAS
 2                      TOPEKA, KANSAS          ORIGINAL

 3          _____
                                           )
 4      In Re:  WESTAR ENERGY, INC.   )   Case No.
        ERISA LITIGATION               )   03-4032-JAR
 5          _____)
                                           )
 6

                TRANSCRIPT OF FAIRNESS HEARING
 7
            PROCEEDINGS had before the Honorable
 8      Julie A. Robinson, United States District
        Court Judge, for the District of Kansas,
 9      Topeka, Kansas, on the 27th day of July,
        2006.
10
        APPEARANCES:
11
        For the             Joseph H. Meltzer, Esq.
12      Plaintiffs:         SCHIFFRIN & BARROWAY, LLP
                            280 King of Prussia Road
13                          Radnor, PA   19087

14                          Ronald P. Pope, Esq.
                            Ralston, Pope & Diehl, LLC
15                          2913 S.W. Maupin Lane
                            Topeka, KS  66614
16
        For Defendant       Sharon Katz, Esq.
17      Westar Energy:      Antoinette Ellison, Esq.
                            DAVIS POLK & WARDWELL
18                          450 Lexington Avenue
                            New York, NY  10017
19
                            Jason M. Hans, Esq.
20                          ROUSE HENDRICKS
                              GERMAN MAY PC
21                          One Petticoat Lane Building
                            1010 Walnut Street
22                          Suite 400
                            Kansas City, MO  64106
23
        For Defendant       Stanley M. Burgess, Esq.
24      Koupal:            ARMSTRONG TEASDALE LLP - KC
                            2345 Grand Boulevard
25                          Suite 2000
                            Kansas City, MO  64108-2617
</pre>

2

```
1          For Defendant         Kathryn A. Lewis, Esq.
           Terrill:              WARDEN TRIPLETT GRIER PA
2                                9401 Indian Creek Parkway
                                 Suite 1100
3                                Overland Park, KS  66210

4          Court Reporter:       Sherry A. Berner, C.S.R.
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

3

```
1                    PROCEEDINGS
2              THE COURT:  All right.  We will call
3       In Re:  Westar Energy, Inc. ERISA Litigation,
4       case number 03-4032.  Your appearances.
5              We'll begin with you, Ms. Lewis,
6       you're on the phone.
7              MS. LEWIS:  Yes.  It's Kathryn Lewis
8       for Defendant Richard Terrill.
9              THE COURT:  All right.  And other
10      appearances, please.
11             MR. MELTZER:  Good afternoon, Your
12      Honor.  Joseph Meltzer of Schiffrin &
13      Barroway on behalf of the plaintiffs.  Joined
14      with me is cocounsel, Ron Pope.
15             MS. KATZ:  And Sharon Katz of Davis
16      Polk & Wardwell, and my colleague, Antoinette
17      Ellison, from Davis Polk & Wardwell, for
18      Westar Energy.  And Mr. Hans on--
19             MR. HANS:  Jason Hans on behalf of
20      Westar Energy.
21             THE COURT:  All right.
22             MR. BURGESS:  I'm Matthew Burgess
23      from Armstrong Teasdale on behalf of Carl
24      Koupal.
25             THE COURT:  All right.  And we're
```

4

```
 1              here for the fairness hearing on the
 2              settlement of the class action in this case.
 3                      On May 15th of this year I held a
 4              preliminary settlement hearing and
 5              preliminarily approved the settlement,
 6              ordered that notice be given, as set forth in
 7              the order preliminarily approving settlement.
 8              And in preliminarily approving the settlement
 9              I conditionally certified the class,
10              preliminarily approved the terms of the
11              settlement, and set this date for today's
12              hearing, and, of course, approved the class
13              notice of proposed settlement.
14                      You all have now submitted a
15              proposed order and final judgment.  And in
16              addition we've received the motion of the
17              plaintiffs for final approval; a memorandum
18              in support of class counsel's motion for
19              award of attorneys' fees, expenses, and case
20              contribution compensation as well; a
21              declaration of Mr. Meltzer in support of the
22              motions for settlement and awarded fees,
23              compensation, and reimbursement of expenses;
24              a declaration of Mr. Pope concerning that as
25              well.
```

5

```
 1                   All right.  Mr. Meltzer or Ms. Katz,
 2          who is going to proceed?
 3                   MR. MELTZER:  I will, Your Honor.
 4                   THE COURT:  All right, go ahead.
 5                   MR. MELTZER:  Thank you.  Your
 6          Honor, we are pleased to be here today.  And
 7          as you stated, we're here to present a
 8          settlement of all claims in the Westar ERISA
 9          litigation.  As Your Honor has alluded to, a
10          lot of papers have been filed in our
11          presentation so I won't cover everything in
12          those papers or it would drag on far too
13          long; but I think I'll hit the relevant
14          points.
15                   As I stated, we have a settlement of
16          all claims in the Westar ERISA case.  It
17          was-- the settlement was the product of some
18          rather strenuous and extensive negotiations
19          between the parties.  We're proud to present
20          the settlement.  We think in light of the
21          litigation risk and the damage analogies in
22          this case that it's an excellent result for
23          the ERISA class.
24                   The settlement calls for a payment
25          of 9.25 million that will be paid by the
```

6

1    defendants into the Westar Energy 401(k)

2    savings plan.  That money will then be

3    distributed to class members and plan

4    participants in accordance with the plan of

5    obligation that we've submitted in

6    conjunction with the settlement.

7              Two points I would want to make

8    quickly.  First, the settlement has been

9    reviewed by an independent fiduciary.  The

10   independent fiduciary was retained by Westar

11   in its corporate capacity and as a fiduciary

12   of the plan.  The independent fiduciary in

13   this case is Independent Fiduciary Services,

14   Incorporated.  Essentially what they do is

15   they come in to look and see that the

16   settlement meets the DOL class exemption, and

17   also that it's not a prohibited transaction

18   under Section 406 of ERISA.  Essentially,

19   they need to make a determination that the

20   release given in consideration for the value

21   of the settlement is fair and that the

22   fiduciaries were not engaged in self-dealing.

23             They have authorized the settlement.

24   Your Honor has, obviously, the ultimate

25   discretion to approve.  But in a case such as

7

1    this it's usually a good sign when the

2    independent fiduciary gives its blessing to

3    the settlement.

4         The other point I would make is that

5    there have been no objections to either the

6    motion for approval or for the application of

7    fees.  That's especially telling in this case

8    because we have a -- as Mr. Pope would tell

9    you -- a very active, interested class.  They

10   were very involved, very engaged in this

11   entire process.  And they have unanimously

12   endorsed the settlement, and no one has

13   lodged any objections to any of the motions

14   pending today.

15        The two motions that are on calendar

16   for today, as Your Honor stated, are a motion

17   for final approval of settlement,

18   certification of the settlement class and

19   approval of the plan of allocation; and a

20   second motion for an award of attorneys'

21   fees, reimbursement of expenses and case

22   contribution compensation.  And, Your Honor,

23   with your permission, I can address the

24   settlement first.

25             THE COURT:  Go ahead.

8

1           MR. MELTZER:  The-- Your Honor,

2      would it be helpful if I gave a background of

3      the claims and the history of the litigation?

4      That's set forth at length in the papers, but

5      I would be happy to do it for the record.

6           THE COURT:  No.  I think you can

7      summarize that.

8           MR. MELTZER:  Okay.  Your Honor,

9      just briefly, the first case in the Westar

10     ERISA litigation was filed in March of 2003.

11     The central claim is that the plan

12     fiduciaries breached their duties under ERISA

13     by allowing investments in the company stock

14     at a time when they knew or should have known

15     that those investments were imprudent.

16           There were many cases that were

17     filed after the Toledo case, the first case

18     filed in March.  There were several cases

19     filed afterwards.

20           Your Honor consolidated those cases

21     in September of 2003.  We filed a

22     consolidated pleading -- which is the

23     operative complaint for today -- in October

24     of 2003, and that touched off a flurry of

25     briefings, several motions to dismiss,

9

1      consolidated response, numerous replies.

2               Your Honor, we started informal

3      settlement negotiations in the summer of

4      2004.  We continued those through the fall to

5      essentially pick a mediator.  Our first

6      mediation -- there wound up being four total

7      -- was in December of 2004 with Gary McGowan,

8      who presided over each and every mediation in

9      this case.

10              Unable to resolve the case, we went

11     back into litigation posture in 2005.  We

12     essentially engaged in a formal

13     discovery protocol at that point that was

14     presided over by Magistrate Judge O'Hara.

15     The defendants produced a large volume of

16     documents.  We prepared, we analyzed, and

17     coded some of those documents.  We set up an

18     electronic database for further analysis.

19              We also continued on a settlement

20     track, fortunately, as we were going through

21     formal discovery.  We had another mediation

22     -- excuse me -- in the spring of 2005 that

23     was, obviously, unsuccessful.  We pressed

24     forward with a lot of discovery in the case.

25              We had yet another mediation in

1    October of 2005.  And while we weren't able

2    to resolve the case at that time, it did

3    break some of the log jam, frankly.  There

4    was a fair amount of progress in October of

5    2005.  That may partly be the result of Your

6    Honor's ruling in September of 2005 on the

7    motions to dismiss.  Gave people a better

8    sense of what the claims were going to be in

9    this litigation.

10            We scheduled a final mediation for

11    January 31st of this year.  We were able to

12    reach an agreement at that time.  We signed

13    the term sheet on that day and began the

14    settlement process which leads us to today's

15    hearing.

16            In terms of the approval process,

17    the Tenth Circuit has established a

18    four-factor test to determine whether the

19    settlement is fair, reasonable, and adequate.

20    The test is set forth in the Tenth Circuit

21    case Jones v. Nuclear Pharmacy.

22            I'll go through them briefly.  The

23    first factor is whether the proposed

24    settlement was fairly and honestly

25    negotiated.  Your Honor, as I just explained,

11

```
 1          there were multiple mediations.  There were

 2          formal negotiations with an experienced

 3          mediator.  There were informal negotiations.

 4          The negotiation process in this case was

 5          arms-length, to say the least, and was

 6          strenuous and was fair and honest.

 7                    The second factor is whether serious

 8          questions of law and facts exist, placing the

 9          ultimate outcome of the litigation in doubt.

10          Your Honor, as a lot of courts have noted,

11          these are difficult cases.  ERISA itself is a

12          very difficult statute.  There are complex

13          questions.  And when you factor in the class

14          certification aspects of this case, you find

15          a way to make an ERISA case even more

16          complicated.  So I think that factor also

17          militates in favor of approval.

18                    The third factor is whether the

19          value of an immediate recovery outweighs the

20          mere possibility of future relief after

21          protracted and expensive litigation.  Your

22          Honor, in this particular case, given what

23          our prospects were for success, even if we

24          overcame every legal hurdle by very capable

25          opposing counsel, I'm not sure that we would
```

1    have done any better; and we may have wound

2    up getting a little bit less for the class

3    settlement.  This factor is particularly in

4    favor of approval here because we were able

5    to get a recovery which may well exceed what

6    we would have gotten even if we would have

7    won through judgment.

8         The fourth factor is the judgement

9    of the parties that the settlement is fair

10   and reasonable.  I think everyone here today

11   will essentially endorse the settlement as

12   fair and reasonable.  I know I do.  I'm

13   fairly confident that my colleagues on the

14   defense side will as well.  And I think those

15   four factors are what the Tenth Circuit views

16   in terms of assessing whether a settlement

17   should be approved.  I think they're all met

18   here.

19        The only other point that I would

20   make with respect to the settlement, Your

21   Honor, again, is that there have been no

22   objections.  So the reaction of the class has

23   been overwhelmingly and unanimously, frankly,

24   in support of approval.

25        The other aspect of the settlement

| 1 | approval is for certification of the |
|---|---|
| 2 | settlement class.  We think that Your Honor |
| 3 | mentioned that you preliminarily certified |
| 4 | the settlement class.  We think that the |
| 5 | class certification in this case is very |
| 6 | appropriate.  A 23(b)(1) class should be |
| 7 | certified.  The class that we're seeking to |
| 8 | certify for settlement purposes is a |
| 9 | participant or beneficiary in the Westar |
| 10 | Energy employees' 401(k) savings plan from |
| 11 | July 1st, '98, through January 1st, 2003, |
| 12 | whose account included investments in Westar |
| 13 | stock. |
| 14 | Your Honor, as our papers explain in |
| 15 | some length, I think all the factors of 23(a) |
| 16 | are met, as well as the factors of 23(b)(1) |
| 17 | have also been satisfied.  There have been a |
| 18 | number of these cases both in a settlement |
| 19 | context and in a litigation context, this |
| 20 | ERISA employer stock type of case.  I believe |
| 21 | they have all been certified under 23(b)(1) |
| 22 | as a non opt-out class.  And we think that's |
| 23 | appropriate here. |
| 24 | Your Honor, I don't-- I don't have |
| 25 | anything more on the settlement itself unless |

14

1    Your Honor has any questions.

2              THE COURT:  I don't believe so.

3              Would anyone else like to weigh in

4    on this matter?

5              MS. KATZ:  If I might just for a

6    second, Your Honor, just to say on behalf of

7    Westar that we are very pleased to be here at

8    what we hope is now the conclusion of the

9    trilogy of civil cases that had originally

10   been presented to Your Honor, and we are very

11   pleased with the settlement.  We do believe

12   that it is fair, reasonable, and adequate.

13             The settlement negotiations were

14   very, very hard-fought.  This was a very,

15   very difficult case for us to resolve.  But

16   we are very pleased with the results, and we

17   think that they will be of great benefit to

18   the members of the class, and we just urge

19   that Your Honor approve the settlement as

20   described by Mr. Meltzer and the

21   certification of the class.  Thank you.

22             THE COURT:  All right.  Thank you.

23             Anyone else?

24             All right.  I'll begin with the

25   matter of the certification of the class.

```
 1        And, yes, there have been no objections by

 2        any single class member to the certification

 3        of the class, to the settlement, or to the

 4        related matters concerning allowance of fees

 5        and expenses and compensation.  I did

 6        conditionally certify the class at the

 7        preliminary hearing.  I'll now reiterate my

 8        findings that class certification is proper

 9        for the class, as defined in the preliminary

10        order.

11                The requirements of Rule 23(a) are

12        met.  The numerosity requirement is met.

13        This class consists of several thousand

14        potential class members.  Joinder is not

15        practicable.

16                The requirement of commonality is

17        met.  There are common issues of fact and

18        law, including whether the defendants

19        breached fiduciary duties owed to the plan

20        and their participants in allowing the

21        maintenance of existing, and the addition of

22        new, investments in the company stock during

23        the proposed class period; issues concerning

24        whether the defendants knew or should have

25        known of problems besieging the company that
```

1    negatively affected the prudence of Westar

2    stock as an investment of the plan during the

3    class period.

4            Other common issues:  Whether

5    defendants were fiduciaries of the plan

6    and/or the participants; whether defendants

7    breached their fiduciary duties, if they were

8    fiduciaries; whether the plans and the

9    participants were injured by such breaches;

10   and whether the class is entitled to damages

11   and injunctive relief.

12           The requirement of typicality is met

13   in that the claims of the class

14   representatives are typical of the claims of

15   the class as a whole.  The plaintiffs in this

16   case and the proposed class are all employees

17   of Westar, a participant of the plan during

18   the class period, and each had part of his or

19   her individual plan investment portfolio

20   invested in Westar stock during the class

21   period.

22           All of them-- all of the plaintiffs

23   sustained injury during the class period; and

24   all of the plaintiffs bring their claims

25   pursuant to ERISA Sections 409 and 502(a)(2)

1    for plan-wide relief, so any relief obtained

2    would inure to the plan as a whole and,

3    derivatively, to its participants during the

4    class period.

5                 And the requirement for adequacy of

6    representation is also met.  The named

7    plaintiffs and their counsel are adequate

8    representatives of the interests of the class

9    as a whole.  I find that plaintiffs have no

10   interest antagonistic to the interests of the

11   absent class members.

12                Plaintiffs have retained attorneys

13   that are highly qualified and experienced in

14   this type of litigation, ERISA breach of

15   fiduciary class actions, specifically.  And

16   based on all of the pleadings in the entire

17   record, I find that they have diligently

18   represented the class before the Court as

19   well as in negotiations with defendants'

20   counsel that resulted in this settlement.  So

21   all of the requirements of 23(a) are met.

22                Also, the requirements of 23(b)(1)

23   are met in that the only remedy available to

24   the plan participants is in fact plan-wide

25   relief, including the restoration of losses

```
1          to the plan.  Actions such as this are by law
2          representative actions which, if successful,
3          will cause defendants to be obligated to
4          provide relief applicable to all participants
5          in the plan.
6                      And given the unique group based
7          relief offered under ERISA for violations of
8          the fiduciary duties owed to participants in
9          covered benefit plans, these actions are
10         appropriate for class treatment under
11         Rule 23(b)(1) to avoid the risk of
12         inconsistent outcomes and inconsistent
13         standards of conduct for defendants; as well
14         as, the prosecution of separate individual
15         actions would, as a practical matter, be
16         dispositive of the interests of other class
17         members who were not parties to the action.
18                      Thus, I will certify the proposed
19         class pursuant to Rule 23 for settlement
20         purposes.  The class being defined as set out
21         in the pleadings.  In short:  Any person who
22         was a participant in or beneficiary of the
23         Westar 401(k) employees' savings plan from
24         July 1, 1998, through January 1, 2003, and
25         whose account in the plan included
```

1          investments in the Westar Energy, Inc.

2          company stock fund.

3                    Excluded from the settlement class

4          are all defendants named in the action, their

5          subsidiaries and affiliates, members of their

6          immediate family, the legal representatives,

7          heirs, successors or assigns of any excluded

8          person, as well as any entity in which the

9          company has or has had a controlling

10         interest.

11                   All right.  And then turning to the

12         proposed settlement itself, first of all,

13         I'll find that notice to prospective class

14         members was adequate.  I approved the

15         proposed class notice of proposed settlement

16         at the last hearing.

17                   The administrator filed an affidavit

18         on July 17, 2006, establishing that notice

19         was mailed to the class, as ordered, and it

20         was also published in accordance with the

21         terms of the preliminary order.  Notice was

22         sent to 3,871 current and former participants

23         of the plan on May 26, 2006, and the approved

24         publication notice was published nationally

25         in *USA Today* and locally in *The Kansas City*

1       *Star*, *The Wichita Eagle*, and *The Topeka*

2       *Capital-Journal*.  Also, plaintiffs created a

3       dedicated settlement website, which is

4       identified in the pleadings.

5                The form and method of notice was

6       agreed to by the parties; it was approved by

7       the Court; it was effectuated by the

8       plaintiffs, consistent with the order; and it

9       satisfies all due process considerations and

10      meets the requirements of 23(e)(1)(B).

11               All right.  Turning to final

12      approval of the settlement, as Mr. Meltzer

13      has indicated, under the Tenth Circuit

14      prevailing case law there are four factors

15      the Court must address and consider when

16      determining whether the proposed settlement

17      is fair, reasonable, and adequate.

18               The first such factor is that the

19      settlement was fairly and honestly

20      negotiated.  As the pleadings set out in

21      detail, and as Mr. Meltzer summarized, this

22      settlement is the product of lengthy

23      litigation as well as mediation and

24      negotiation:  18 months or more of formal and

25      informal negotiations; multiple mediation

```
 1        sessions with an experienced mediator, who

 2        was also the mediator in the Westar

 3        securities litigation; voluminous discovery;

 4        as well as intense advocacy and litigation

 5        through this stage of motions to dismiss and

 6        responses to that.

 7             In addition, the Court finds that

 8        class counsel had an in-depth understanding

 9        of the merits of plaintiffs' claims and the

10        defenses available to defendants.  Plaintiffs

11        counsel had the same.  The Court-- in

12        addition, of course, there was this oversight

13        or independent evaluation by a third party

14        experienced in this type of litigation.  So

15        based on all of these things, the Court

16        concludes that the settlement was fairly and

17        honestly negotiated.

18             The second factor is that there be

19        existence of serious questions of law and

20        fact.  This is obviously evident to the Court

21        based on having reviewed and considered and

22        ruling on a number of issues that arose in

23        the context of the motions to dismiss.

24             In addition, more generally, as

25        plaintiffs point out, ERISA is a developing
```

1    and esoteric area of the law.  It does

2    present many difficult issues of law and fact

3    made more complex, of course, in the context

4    of a class action such as this one.  Although

5    plaintiffs survived defendants' motions to

6    dismiss, by and large, defendants would

7    likely have raised serious defenses at the

8    summary judgment phase as well as at trial,

9    if the case proceeded that far.  Many of

10   these issues were legally and factually

11   complex issues that militate in favor of

12   settlement.

13           Also, of course, this case had yet

14   to be certified as a class action, and

15   plaintiffs and defendants, obviously,

16   recognize that courts have not

17   uniformly certified a proposed class to all

18   claims in ERISA cases of this nature.

19           Also, the risks of establishing

20   damages are always complex and generally

21   recognized in the context of these types of

22   actions.  Very complex and require the

23   completion of full discovery and evaluation

24   of the relevant time period by the Court.

25           And there were questions as to

1    whether the losses alleged by plaintiffs

2    could be compensated under ERISA.  There were

3    questions as to the proper measure of

4    damages.  All of which, again, militated in

5    favor of settlement.

6            Had this case gone to trial, likely

7    there would have been a battle of experts.

8    Would be difficult for the parties to

9    anticipate the outcome or the decision that

10   would be made after hearing expert testimony

11   from both sides.

12           A third factor is the value of

13   immediate recovery.  The Tenth Circuit has

14   held that the value of immediate recovery is

15   simply the monetary worth of the settlement.

16   This settlement is for $9.25 million.  And

17   the Court agrees that this amount may well

18   have been in excess of what the class may

19   have obtained even through trial.  This

20   recovery is in addition to the payment the

21   plan will receive from the recovery garnered

22   in the securities litigation and

23   substantially increases the recovery for the

24   individual class members.

25           It is-- it is clear that continued

1       litigation would have been protracted,

2       complex, and expensive; requiring more

3       discovery; requiring the battle over class

4       certification; requiring hiring and vetting

5       and discovery of experts; and ultimately, of

6       course, the expenses and time associated if

7       this case went all the way to trial.

8                And then the final factor the Court

9       must look at is the judgment of the parties

10      that the settlement is fair and reasonable.

11      And I've heard from both parties that after

12      -- as Ms. Katz said -- protracted mediation

13      and negotiation and intense negotiation

14      advocacy, they are satisfied that the

15      settlement is fair and reasonable to all.

16               Both parties are represented by

17      nationally-known counsel with extensive

18      experience in ERISA class actions.  This has

19      been vetted by a third party.  It's been

20      mediated.  The Court is convinced that the

21      settlement is fair and reasonable.  Thus, the

22      settlement will be approved at this hearing

23      on final approval of settlement.

24               And now we'll turn to the motion for

25      award of fees, expenses, and contribution of

```
 1         compensation to class members.

 2              MR. MELTZER:  Thank you, Your Honor.

 3         Your Honor, we put in an application

 4         for award of attorneys' fees, reimbursement

 5         of expenses and case contribution

 6         compensation.  Our request is for 30 percent

 7         of the settlement fund.  That amounts to

 8         2.775 million, plus reimbursement of expenses

 9         of $76,715.59, and a $1,000 award for each

10         named plaintiff for their contribution to

11         this case.

12              With respect to the request for

13         fees, there is a-- again, there's a test that

14         the Tenth Circuit employs to determine

15         whether-- whether the request is reasonable.

16         That-- that test is set out, among others, in

17         Brown v. Phillips Petroleum.  This test is

18         quite a bit longer than the test relating to

19         approval of the settlement so I'll try and

20         run through the factors as quickly as I can.

21         There are, I believe, 10 or so that apply

22         here.

23              First is the time and labor

24         required.  As the application states, Your

25         Honor, the class counsel has spent over 4,000
```

1    hours in prosecuting this case.  It was a

2    case that was heavily litigated both on the

3    litigation side as well as on the mediation

4    settlement front.

5         The lodestar in the case is a little

6    bit over $1.4 million.  That translates into

7    a multiplier, a lodestar multiplier, of 1.88.

8    I would submit that that is a very modest

9    multiplier.  In comparison, Your Honor, I

10   believe in the Westar securities case the

11   30 percent awarded by Your Honor, I believe

12   that amounted to something like a 3.9

13   multiplier.  So here it is far, far less.

14        The second factor is the novelty and

15   difficulty of the questions presented by the

16   case.  As we've stated in this hearing

17   before, ERISA is a difficult case-- ERISA is

18   a difficult statute to prosecute a case.

19   There are a lot of trapdoors in ERISA.  The

20   legal questions that get presented in a case

21   like this are complex.  They are novel and

22   they are developing.  And unless you practice

23   in it, it is a very difficult area of the law

24   to navigate correctly.

25        The third factor is somewhat related

 1          to that -- the skill requisite to perform the

 2          legal service properly.  Again, ERISA cases

 3          are not easy.  When you build in a class

 4          action component to them, they go from

 5          complicated to extremely complicated.

 6                    It is difficult to present the case

 7          properly both in pleadings as well as in what

 8          were essentially summary trials during all of

 9          these mediations.  Getting a damage analysis

10          that's credible and gives you a, you know,

11          hope for recovery is not easy.  Navigating

12          the statute and the legal issues that are

13          compounded by difficult issues of fact,

14          again, is not an easy proposition.

15                    The fourth factor, the preclusion of

16          other employment by the attorneys due to

17          acceptance of the case.  As I stated

18          previously, we dedicated 4,000-- over 4,000

19          hours.  That obviously has an opportunity

20          cost that prevents us or precludes us from

21          working on other matters during the two-plus

22          years or almost three years of litigation

23          that we dedicated here.  I retract that.

24          Three-plus years of litigation here.

25                    The-- whether the fee is fixed or

1   contingent is another factor.  Here, there

2   was no guarantee that we would receive

3   payment for anything.  I believe that is

4   particularly telling here because with Your

5   Honor's ruling on the motion to dismiss and

6   in a developing area of the law, there's no

7   certainty that you're going to overcome the

8   initial Rule 12 challenge.  Did not come

9   until September of 2005, several years into

10  the litigation, after we had expended a lot

11  of time and a lot of money in prosecuting

12  these claims.  So there was a great deal of

13  uncertainty, and there was certainly a fairly

14  large risk that we were going to get no

15  payment whatsoever.

16           The next factor is the amount

17  involved and the results obtained.  Your

18  Honor, it's a settlement for $9.25 million.

19  I believe it does substantially increase

20  recovery to the class members.  It is in

21  addition to the recovery that the plan will

22  make as part of the Westar securities case.

23  I believe it is an excellent result.  And I

24  believe that factor also supports the

25  requested fee.

1              The next factor is the experience,

2       reputation, and ability of the attorneys.  My

3       firm and-- my firm is an experienced--

4       Schiffrin & Barroway is an experienced class

5       action firm.  Mr. Pope and his firm, Ralston,

6       Pope & Diehl, are very experienced

7       litigators, especially in this particular

8       court.  We-- I'll leave the rest of it to the

9       papers so that I don't stand up and sort of

10      trumpet my success and abilities.

11             The next factor is the

12      undesirability of the case.  Your Honor, it's

13      not a difficult leap to say that an ERISA

14      class action to many practitioners would be

15      viewed as undesirable.  Sometimes my wife

16      feels the same way.  The desirability is--

17      frankly, when cases are easy and not so

18      complex, they become a lot easier to jump

19      into and dedicate your time and resources to.

20      But where they are difficult and complex, as

21      here, it becomes a little more of a-- a

22      little more of a challenge.  And, frankly, I

23      think that factor supports the requested fee

24      as well.

25             Awards in similar cases.  When you

1          look at what the multiplier is in this case,

2          I think it compares extremely favorably to

3          both awards in the Tenth Circuit in class

4          action cases -- I think that's a very modest

5          multiplier, the 1.88 -- as well as cases

6          across the country.  I think you'll see

7          multipliers that are closer to three, four,

8          and five for this type of case.  So I think

9          the requested fee compares very favorably.

10              The final point, Your Honor, is we

11         have no objections to the award of the fees

12         to the class, as unanimously endorsed in our

13         application.

14              The second component is for

15         expenses.  We have expended $76,715.59.  We

16         submitted an application to detail the

17         categories of expense.  A lot of that is

18         discovery related.  Much of-- some of that is

19         travel.  It's travel related.  There are also

20         copying expenses and the like.  I think the

21         expenses, given the length of the case and

22         the complexity of the case, were minimal,

23         fortunately, because we were able to resolve

24         the case before we got further into expert

25         discovery.  So resolving the case before we

31

1        went into really a deposition protocol and

2        before we started submitting summary judgment

3        papers helped keep expenses to a relative

4        minimum.

5               The final component of the

6        application is for case contribution awards.

7        We've asked for $1,000 apiece.  That is a low

8        amount relative to what awards have been in

9        other cases.  But essentially it recognizes

10       that there are quite a few named plaintiffs.

11       In fact, more in this case than in almost any

12       other that I've seen.  But the one thing I

13       will say for the named plaintiffs is they

14       were very active.  They played a big role.

15       They were a large part of us being able to

16       hold the line in settlement negotiations.  I

17       think they did a really excellent job and

18       served the rest of the class very well.

19              THE COURT:  All right.  Thank you.

20              MR. MELTZER:  If you have any

21       questions, I'll be happy to address them.

22              THE COURT:  I don't.

23              Anyone else?

24              All right.  The so-called <u>Johnson</u>

25       factors that have been-- come from a Fifth

1    Circuit case but have been adopted in the
2    Tenth Circuit are those as outlined by
3    Mr. Meltzer.  In the Tenth Circuit the
4    percentage-of-recovery method has been
5    endorsed as an appropriate method for
6    determining an award of attorneys' fees in
7    these types of cases and in other types of
8    cases as well.
9              Based on the entire record, and
10   particularly the parties' pleadings
11   concerning these fees and expenses, I find
12   that the fees requested are reasonable.  The
13   expenses are also reasonable and customary.
14   And the compensation requested for the
15   members, the named plaintiffs, is also
16   reasonable.
17             Many of these factors have already
18   been addressed in summarizing the propriety
19   of the settlement that was approved.  But
20   I'll note further that there was extensive
21   time and labor involved in this case.  Over
22   4,000 combined hours in prosecuting the case
23   that culminated in the settlement.
24             As already addressed, the questions
25   legally and factually were novel and

1        difficult and complex.

2                 Class counsel is experienced,

3        nationally recognized in this field, and had

4        the requisite skill necessary to perform the

5        legal services required in cases as complex

6        as this.

7                 Based on the number of hours spent

8        over the last three-plus years, it's clear

9        that other employment was precluded to a

10       large degree by the attorneys that

11       represented the class.

12                The 30 percent request is in keeping

13       with the range of reasonable fee awards or

14       fee awards that have been found reasonable in

15       the Tenth Circuit.  And the multiplication

16       factor as well.

17                The-- as I've already addressed, the

18       $9.25 million settlement is very favorable to

19       the class.  Given the complexity of the legal

20       and factual issues, the need for protracted

21       and intense advocacy, it's fair to say that

22       this case would have been viewed as

23       undesirable, perhaps, to many.  And that

24       factor needs to be taken into account.

25                The nature and length of the

1    professional relationship with the client is

2    evident, given the length of time that has

3    been spent to date on this case taking it

4    through settlement.

5                    Again, the 33 percent-- or, rather,

6    the 30 percent requested is in line with the

7    range of awards in similar cases in this

8    circuit, including the range of awards given

9    by this particular Court.

10                    As far as the expenses, we've

11    reviewed those.  They appear to be reasonable

12    and customary expenses associated with

13    discovery and litigation and mediation.

14                    And finally, with respect to the

15    request for $1,000 each as a case

16    contribution award to each of the 27 named

17    plaintiffs, I'll find that that is also

18    reasonable and appropriate, given the

19    litigation support that they provided over

20    the last three-plus years to class counsel to

21    the benefit of all other members of the

22    class.

23                    So the motion for award of

24    attorneys' fees, reimbursement of expenses

25    and case contribution compensation is

1    granted.

2          You all had, I think, presented a

3    proposed order.  I think my law clerk talked

4    to you about some language that needed to be

5    changed.  And as soon as you can get that-- I

6    suppose we could change that, if need be, and

7    we can get this order out right away.

8          I do commend all of you.  I know

9    that you-- I know this was a difficult case

10   for everyone involved.  And I had some sense

11   of that deciding the motion to dismiss, how

12   difficult many of these-- all of these issues

13   really were.  So I do appreciate the obvious,

14   you know, commitment you all made to securing

15   a fair and reasonable settlement that, you

16   know, benefitted the members of the class and

17   benefitted the company.  And I know it took a

18   lot of work and a lot of intense lawyering.

19   And you all, obviously, did a very excellent

20   job in all respects.  So I commend you.  And

21   it's nice to have lawyers such as yourselves

22   appear in this court.  I look forward to

23   seeing you again someday in another complex

24   class action, no doubt.

25          MR. MELTZER:  Thank you, Your Honor.

1            THE COURT:  All right.  We'll be in

2       recess.

3                    (THEREUPON, the hearing

4       concluded).

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

37

```
 1        UNITED STATES OF AMERICA  )
                                    )  ss:
 2        DISTRICT OF KANSAS        )

 3

 4                C E R T I F I C A T E

 5

 6            I, Sherry A. Berner, Certified Shorthand

 7        Reporter in and for the State of Kansas, do

 8        hereby certify that I was present at and

 9        reported in machine shorthand the proceedings

10        had the 27th day of July, 2006, in the

11        above-mentioned court; that the foregoing

12        transcript is a true, correct, and complete

13        transcript of the requested proceedings.

14            I further certify that I am not attorney

15        for, nor employed by, nor related to any of

16        the parties or attorneys in this action, nor

17        financially interested in the action.

18            IN WITNESS WHEREOF, I have hereunto set

19        my hand and official seal at Topeka, Kansas,

20        this  2ND  day of   AUGUST      , 2006.

21

22                    _____
                                Sherry C. Berner
23                      Sherry A. Berner
                        Certified Shorthand Reporter

24

25
```

SHERRY A. BERNER
Official Court Reporter