1

56ttaiec                    Conference

1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------------x

3   IN RE:

4   AMERICAN INTERNATIONAL GROUP, INC.    Lead Case:

5   ERISA ACTIONS                          04 CV 9387 (JES)

6   ------------------------------------x
                                          New York, N.Y.
7                                         June 29, 2005
                                          4:10 p.m.
8
    Before:
9
                    HON. JOHN E. SPRIZZO,
10
                                          District Judge
11
                        APPEARANCES
12
    WOLF POPPER
13       Attorneys for Plaintiffs
    BY:  MARIAN P. ROSNER
14
    KELLER ROHRBACK
15       Attorneys for Plaintiffs
    BY:  GARY A. GOTTO
16
    WECHSLER HARWOOD
17       Attorneys for Plaintiffs
    BY:  ROBERT I. HARWOOD
18
    SQUITIERI & FEARON
19       Attorneys for Plaintiffs
    BY:  LEE SQUITIERI
20
    PAUL, WEISS, RIFKIND, WHARTON & GARRISON
21       Attorneys for Defendant AIG
    BY:  LEWIS CLAYTON
22

23

24

25

2

56ttaiec                    Conference

1           THE COURT:  Go ahead.

2           MS. ROSNER:  Marian Rosner from Wolf Popper, and I

3    would like to first move for the admission pro hac vice of Gary

4    Gotta of Keller Rohrback.  And I have the papers.

5           THE COURT:  These are the ERISA actions; right?

6           MS. ROSNER:  The ERISA actions.  There are eight of

7    these actions presently before you, and we are very pleased to

8    finally have you as the judge.  We have been bounced to about

9    four different judges.

10          THE COURT:  Why was this case bounced around so much?

11          MS. ROSNER:  I guess for the same reason, they have

12   shares.

13          THE COURT:  They didn't have them, they bought them.

14   Jeffrey Grant told me a long time ago that if you got a case

15   you don't want, buy shares of stock.

16          MS. ROSNER:  There are eight ERISA cases before your

17   Honor.  Six of them support my firm and Keller Rohrback as

18   co-counsel.  That motion is opposed by Mr. Squitieri and

19   Mr. Harwood.

20          We need, I guess, a hearing date for that motion.

21          THE COURT:  Why is there a lead counsel in an ERISA

22   action?

23          MS. ROSNER:  That's the precedent, your Honor.

24          THE COURT:  They're not Securities Act claims; are

25   they?

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

56ttaiec                      Conference

1          MS. ROSNER:  No, they're all the ERISA claims.

2     Mr. Gotto could address that.

3          MR. CLAYTON:  Your Honor, Lewis Clayton from Paul

4     Weiss for the AIG defendants.

5          From our perspective, because I was listening to the

6     derivative argument, and I think the point came through very

7     clearly we should do this once, we should do it efficiently, we

8     shouldn't do duplicative discovery.  From our perspective, we

9     are neutral as to who the lead counsel is on the ERISA side,

10    but we would like a lead counsel because it makes it easier for

11    us to deal with issues like discovery and scheduling.

12         THE COURT:  If you agree on that, what is the fight

13    about?

14         MS. ROSNER:  We don't agree.

15         THE COURT:  Tell me what you don't agree on, I'll rule

16    today on the issue.

17         MS. ROSNER:  We were the first firm to file an ERISA

18    case, and we did so after an investigation that learned that

19    AIG merged with a company called American General, and the AIG

20    stock plan became -- it was worth $600 million as result of

21    that merger.  We were the first file and find that out and

22    consolidate claims.  To make a long story short, we were on

23    file for maybe five months alone.

24         THE COURT:  When did you file your action?

25         MS. ROSNER:  Here.

4

56ttaiec                    Conference

1          THE COURT:  When?

2          MS. ROSNER:  In December.  We then filed an 81 page

3     amended complaint and were contacted by other people who were

4     in different plans within the AIG ERISA plans, and we filed an

5     81 page amended complaint in I believe April.  We were still

6     alone in the case.

7          Eventually about seven more cases were filed using our

8     complaint as a model, and we then were contacted by Keller

9     Rohrback, which is one of the premium firms in the country, on

10    AIG, and we agreed to be co-lead counsel with them, given the

11    fact that we had both the initiative and whatever and they also

12    had the expertice.

13         THE COURT:  Are these going to be class actions at

14    some point?

15         MS. ROSNER:  Class action.  As I said, the majority of

16    the ERISA cases on the file support that structure.  There

17    really is no reason why it shouldn't be granted, except the

18    fact that two of the firms simply dispute our being co-lead

19    counsel and want to be co-lead counsel themselves.

20         THE COURT:  Why?

21         MR. SQUITIERI:  Your Honor, Lee Squitieri from

22    Squitieri & Fearon.  We are in fact a competing lead counsel

23    group.

24         Let me give you a fuller background than what

25    Ms. Rosner gave.  Her first complaint filed in November,

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

56ttaiec                    Conference

1    December, whenever it was, was not as full as it is now.   It

2    was just a bid rigging case that basically copied the Attorney

3    General's general complaint, said these bid rigging things made

4    a pension purchase of stock an imprudent investment.   In April

5    they filed an amended complaint.   We filed our complaint, the

6    Phillips complaint, approximately a week later.   Mr. Harwood

7    filed after that.

8            We approached Wolf Popper and said there are three

9    cases on file, I think there may have been four at that time,

10   not eight, not ten, and we said why don't we work together on

11   this case.   The response from that firm, through Ms. Rosner's

12   partner Mr. Levy, was no, we are controlling the case, we were

13   here first, we're not working with anybody else in any

14   cooperative way, we'll be the lead counsel and the sole lead

15   counsel.

16           MS. ROSNER:   That's not --

17           THE COURT:   Well, you'll get a chance to respond.

18           MR. SQUITIERI:   That's not the way to do that.   We

19   have well-established claims here, and we filed a complaint

20   which is an original complaint.

21           THE COURT:   These are ERISA claims.   What is it, kind

22   of joint stockholders, what is it, an employee fund?

23           MS. ROSNER:   Employee funds.

24           MR. SQUITIERI:   401(K) plans.

25           THE COURT:   Subject to the abuse of discretion

56ttaiec                    Conference

1    standard, I guess.

2          MS. ROSNER:  That's correct.

3          MR. SQUITIERI:  Yes.  So we tried to come to an

4    accommodation with them to joint leadership structure,

5    efficient, and one person would be -- appoint one person but

6    everybody would have some decision making input, and they

7    refused.  The Keller Rohrback firm only came in at the very

8    end.

9          THE COURT:  Who else was objecting?  You, I take it.

10         MR. SQUITIERI:  There's one competing motion.

11         THE COURT:  I don't understand why I should appoint

12   lead counsel at all in this case.

13         MS. ROSNER:  Well, your Honor, the precedent has been

14   to do that in ERISA cases.

15         THE COURT:  But tell me why, not what other judges

16   have done.

17         At some point I will have to rule upon a motion for

18   class action certification, at that time point I will decide

19   basically what lawyers should represent the lead class action

20   plaintiff.  Once I determine that, we'll have a lead counsel.

21         MR. HARWOOD:  With eight cases and eight sets of

22   lawyers pounding the defendants with eight separate requests

23   and scheduling class action depositions, making eight different

24   class action notices --

25         THE COURT:  I could deal with that very simply by

56ttaiec                    Conference

1    staying discovery.  So that's the way I resolve the motion for

2    class action.

3         MS. ROSNER:  The precedent has been in this Court, and

4    Mr. Gotto from Keller Rohrback has been in some of the biggest

5    ERISA cases, Worldcom, Global Crossing, et cetera, et cetera,

6    has always been a lead or co-lead counsel.

7         THE COURT:  But there will be one once I resolve the

8    class action.  The problem with this is I don't want to appoint

9    lead counsel now then later on decide that the person that I

10   appointed as lead counsel is not representing a plaintiff who

11   adequately represents the interests of the class, because

12   that's a separate threshold you have to cross.  And once I

13   cross that threshold as to who is the most representative

14   member of the class to prosecute the action on behalf of the

15   class, then at that point in time I'm going to rule on whether

16   that lawyer should be taking the lead in this litigation.  So

17   if I do it now, I face the risk that I may change my mind here,

18   and what good is it?

19        MR. HARWOOD:  Your Honor has discretion to change his

20   mind later.

21        THE COURT:  My question is what is gained by

22   appointing lead counsel now other than appointing someone for

23   the purpose of funneling --

24        MR. HARWOOD:  It would streamline the litigation, your

25   Honor, and make it easier for the defendants to coordinate with

56ttaiec                        Conference

1    one point person, and it would guide strategy.

2              THE COURT:  When we get to discovery, that will be

3    true, but I'm not going to go to discovery until we have

4    discovery first on the class action motion.

5              MR. GOTTO:  Your Honor, if I may, Gary Gotto.

6              The procedure that we followed in many of the

7    substantial cases, Enron, Worldcom, some of the other case that

8    we have been lead counsel with and has worked quite well is

9    there to be initial ERISA only discovery, limited discovery,

10   ERISA plan documents, committee minutes, et cetera.  That then

11   permits the filing of a consolidated amended complaint that

12   names the right people as defendants.

13             THE COURT:  I assume you have had access to those

14   documents already before you brought your complaint.

15             MR. GOTTO:  Only some of them.  We have not had access

16   to committee minutes or documents evidencing the appointment of

17   planned fiduciaries.

18             So the procedure would be to get those documents, to

19   file an amended complaint, and for that to be the first step

20   before the class certification procedure.  And in order to

21   streamline and I think make that process efficient, having lead

22   counsel appointed to do so is what makes the most sense, and

23   that I think has been the reason other courts have followed

24   that procedure.

25             MR. CLAYTON:  If I may, your Honor, we don't have any

56ttaiec                     Conference

1  problem with providing the kinds -- presumably they have the

2  documents they need because they already filed eight complaints

3  or so, but we don't have any problem with providing them the

4  materials that they're due under the ERISA statute.  As your

5  Honor may know, under the ERISA statute, someone who is a

6  participant, whether there is litigation or not gets access to

7  plan documents.

8           THE COURT:  They have a right to see them under the

9  law.

10          MR. CLAYTON:  And we have given them.  I don't know if

11  we have given this particular set of lawyers --

12          THE COURT:  That's why I was surprised when I'm told

13  after the plaintiffs filed they haven't had access to the

14  documents.

15          MR. CLAYTON:  Absolutely.  So if there are more

16  materials they believe they are entitled --

17          THE COURT:  Maybe nobody just went down and looked.

18          MR. CLAYTON:  If there are more materials that they're

19  entitled to under ERISA, we're happy to discuss that with any

20  of the counsel who filed cases.  And if we owe them

21  documents --

22          What I don't want to have happen is for there to be

23  discovery in this case, because, as your Honor says, number

24  one, do we have an adequate class member, and there's going to

25  be real issues here about adequacy on the class side.  It's

56ttaiec                    Conference

1   exactly the issues your Honor was focusing on.

2          THE COURT:  Why don't I just assume that, save them

3   the trouble of going down and looking at documents they have a

4   right to see, that you make available to them whatever document

5   they have a right to receive under the law.

6          MR. CLAYTON:  Absolutely.

7          THE COURT:  Make those available within the next two

8   weeks.

9          MR. CLAYTON:  If they want to give us a list of things

10  they think we haven't given, we'll start talking to them

11  immediately, your Honor.

12         THE COURT:  Then I should proceed to the question of

13  class action certification.

14         MS. ROSNER:  Your Honor, the problem is we have to

15  file a consolidated complaint, and one of the things that we

16  need to do that is the identity of the retirement board, which

17  has not been disclosed to us.

18         THE COURT:  Identity of the retirement board?

19         MR. GOTTO:  The individual fiduciaries.

20         MS. ROSNER:  The name is John Does in the discovery we

21  have so far.

22         THE COURT:  I don't understand that.

23         MR. SQUITIERI:  We'll get that.

24         THE COURT:  That's got to be something that you're

25  entitled to get under the law.

56ttaiec                    Conference

1          MR. CLAYTON:  We don't have to take the time of all

2     the people sitting here to --

3          THE COURT:  That's why I was surprised when I was

4     told -- I think maybe nobody went down to look.  That's all

5     stuff that you have a right to see.

6          MR. GOTTO:  Your Honor, to date their position has

7     been as to the American General plan they would not provide the

8     information because the litigation was pending.

9          THE COURT:  American General plan?

10         MS. ROSNER:  It's American General that merged with

11    AIG, that's how the AIG plan got funded with the AGG stock.

12         THE COURT:  Is there one plan or two?

13         MS. ROSNER:  Three.

14         THE COURT:  Three.

15         MR. CLAYTON:  There at least were three plans.

16         But your Honor, I think the question of this very

17    basic ERISA information that they seek is something we can work

18    out.  And I have not -- I don't question what counsel says, but

19    I have not had any communications with him about this issue.

20         THE COURT:  So I can appoint a lawyer for the purpose

21    of passing on the information until we are ready to see the

22    case, but I'm not prejudging the question of class action at

23    this point.

24         MR. CLAYTON:  Those are real issues.

25         THE COURT:  Because I don't know upon what basis I

56ttaiec                    Conference

1   would make the decision.  The Securities Act tells me to do it

2   based on the size of interest, but this is not that kind of

3   case.

4            MS. ROSNER:  Your Honor, under Rule 26G there are four

5   factors that you apply in deciding lead counsel in a case like

6   this.  One is -- there are four factors, we cite them in our

7   brief.  One is the initiative of counsel so far getting the

8   work done, two, general experience in the field, so --

9            THE COURT:  All of which I will have to revisit for

10  the class action motion.

11           MS. ROSNER:  But someone has got to file the amended

12  complaint.  It's not productive to consult with eight people in

13  order to agree on an amended complaint.  Somebody has to take

14  responsibility to file that complaint.  Now we have done -- our

15  complaint, like it or not, has been the model for everyone

16  else's complaint.  We have filed an 81 page amended complaint

17  that basically contains all the claims and has plaintiffs' all

18  three plans, which they do not.

19           THE COURT:  I don't see why you can't cooperate with

20  consolidating a claim.

21           MR. SQUITIERI:  Your Honor, may I make a suggestion?

22           THE COURT:  Yes.

23           MR. SQUITIERI:  I will suggest you use your discretion

24  to appoint the class counsel at the appropriate time.  For the

25  time being, perhaps the Court would consider designating

56ttaiec                    Conference

1    Ms. Rosner's firm as first filed case, my firm as a second

2    filed case as two coordinating counsels in the interim.  And in

3    other words, we take charge of coordinating, the defendant

4    doesn't have to call eight attorneys, the Court doesn't have to

5    call eight attorneys.

6            THE COURT:  That's fine with me.  I take it you'll

7    take the responsibility of filing the second amended complaint.

8            MR. SQUITIERI:  That's correct.

9            MS. ROSNER:  Your Honor, I think that's unfair to

10   Keller Rohrback.

11           THE COURT:  What's unfair about that?  He's not being

12   asked to work.

13           MR. GOTTO:  Your Honor, the suggestion here is

14   Mr. Squitieri filed the second case.

15           THE COURT:  You know what we're talking about.

16   Everyone worries about how the fees are going to be carved up

17   at the end.  But that's not something that you have to worry

18   about now, that depends on who the class action lawyer is.

19   That's where you are going to ultimately determine who gets

20   what from the pie, so to speak.  I practiced law for 25 years,

21   I know what you're really fighting about.

22           MR. GOTTO:  But your Honor, I think the point here,

23   too, is that the complaint that gets filed needs to be the best

24   complaint that can be filed in the best interest of the class.

25           MR. SQUITIERI:  No one seeking to exclude input.

56ttaiec                    Conference

1          THE COURT:  I would assume you should all be able to

2     agree upon a consolidated class action.

3          MS. ROSNER:  I don't know, your Honor.  They have a

4     complaint --

5          THE COURT:  If you can't all agree, I won't take a

6     consolidated class action complaint, because if their argument

7     is we don't like your consolidated complaint and we have -- we

8     want it differently, then why should I proceed on the basis of

9     a consolidated complaint when some of the people who are sued

10    here don't like what you have done?

11         That's the whole thing here.  They have clients they

12    represent, individual clients, and they're not required to file

13    the complaint that you want to file.  That's the problem with a

14    consolidated complaint, it only works if everybody agrees on

15    what it's supposed to say.  If you don't agree, then why should

16    I take a consolidated complaint?  I'll keep the three

17    complaints the way they are.  There is no reason for a

18    consolidated complaint if the parties can't agree to what it

19    should be.

20         MS. ROSNER:  I don't know how the defendants feel

21    about moving to dismiss against three separate complaints.

22         MR. CLAYTON:  Your Honor, I think it's very easy to

23    overestimate the differences.  There are eight different

24    complaints, they're not night and day.  They're certainly not

25    identical, but they're pretty similar.  It isn't as if one is

15

56ttaiec                    Conference

1    taking one approach --

2           THE COURT:  All three of you are a committee to draft

3    a consolidated complaint and coordinate discovery.  You can

4    delegate among yourselves what functions you want to perform.

5           MR. HARWOOD:  Thank you very much.

6           MR. CLAYTON:  Thank you, your Honor.

7           THE COURT:  That takes care of it.

8           Now what about the class action motion?

9           MS. ROSNER:  Who is the committee?

10          THE COURT:  You are three are the committee.

11          MR. CLAYTON:  Four.

12          THE COURT:  Four, all right, fine.  I don't care what

13   it is, I thought there were just three.

14          MR. CLAYTON:  As long as I am not on the committee.

15          THE COURT:  Who is the fourth?

16          MR. SQUITIERI:  Squitieri Fearon.

17          THE COURT:  I thought you two were together.

18          MR. HARWOOD:  Those two are together.  We filed

19   separate complaints.

20          THE COURT:  So one, two, three, four.  So you will be

21   a committee of four and you will delegate yourselves what

22   functions you want each person to perform.

23          MS. ROSNER:  I thought you designated us to be the

24   point person.

25          THE COURT:  You can be the point person if you want

16

56ttaiec                    Conference

1   to.

2          MS. ROSNER:  We're the first filed case.

3          THE COURT:  You can delegate among yourselves about

4   who handles --

5          MS. ROSNER:  If you don't appoint us, we'll be back

6   here tomorrow with another motion.

7          MR. HARWOOD:  This will come as a surprise to the

8   Court, but the four people in front of you have worked together

9   many, many years in many, many cases cooperatively.  The

10  argument you are hearing now has nothing to do with the quality

11  of the consolidated complaint.

12         THE COURT:  When am going to get a class action

13  motion?

14         MS. ROSNER:  You will, your Honor, but I thought you

15  had appointed us as point person.

16         MR. HARWOOD:  Judge, the four of us can work

17  cooperatively.

18         THE COURT:  I appointed a committee.  If they all

19  agree that you should be the point person, that's fine with me.

20  If you don't agree and two are on one side and two are on the

21  other, I will make the call.

22         MS. ROSNER:  That's why I said we'll be back here.

23         THE COURT:  Anyway, so that's enough for our purposes.

24         What about the class action motion?

25         MR. CLAYTON:  Your Honor, I would suggest that when

17

56ttaiec                    Conference

1    they get together -- my prediction is that under your

2    Honor's --

3             THE COURT:  Why don't I fix a date for the filing of

4    the consolidated complaint.

5             MR. CLAYTON:  Then we'll work from there, because we

6    need to see what is in that, then we can focus on the time.

7             THE COURT:  So 30 days to file a consolidated class

8    action complaint?

9             MR. GOTTO:  On the assumption we get the materials

10   in --

11            THE COURT:  60 days?  I don't really care.

12            MR. HARWOOD:  60 days.

13            THE COURT:  So 60 days, July 29th -- August 29th.

14            August 29th, I'm a month ahead of myself, or behind, I

15   should say.  Then we'll have another conference in September,

16   you'll tell me what the situation is, whether you'll make a

17   motion, bearing in mind how difficult it is to get a motion to

18   dismiss granted, or whether or not you want to go ahead with

19   the class action discovery.

20            MR. CLAYTON:  We will look at it.

21            Thank you, your Honor.

22            THE COURT:  Have a good day now.

23                              o0o

24

25