**EXHIBIT K**

√ P 2776
8/22/05

lancaster82205

1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CIVIL NO. 04-1398

GORDON LANCASTER, et al.,        :
                                 :
        Plaintiffs,              :
                                 :
        -vs-                     :
                                 :
ROYAL DUTCH PETROLEUM, et        :
Al,                              :    TRANSCRIPT OF PROCEEDINGS
                                 :
        Defendants.              :
                                 :
- - - - - - - - - - - - - - - -  :

                    Newark, New Jersey
                    August 22, 2005

        B E F O R E:

            THE HONORABLE JOHN W. BISSELL
        UNITED STATES DISTRICT COURT JUDGE

        A P P E A R A N C E S:

LITE DEPALMA GREENBERG & RIVAS
BY:  JOSEPH J. DE PALMA, ESQ.,
For the Plaintiffs.

Pursuant to Section 753 Title 28 United States
Code, the following transcript is certified to be
an accurate record as taken stenographically in the
above-entitled proceedings.

            Joanne M. Caruso, CSR, CRR
                Official Court Reporter
                  (908)334-2472

JOANNE M. CARUSO, CSR, CRR,  OFFICIAL COURT REPORTER, NEWARK, N.J.

2

lancaster82205

APPEARANCES CONTINUED:

MILBERG WEISS
BY:   BRAD N. FRIEDMAN, ESQ.,
        And
WECHSLER HARWOOD
BY:   ROBERT I. HARWOOD, ESQ.,
        And
SCOTT & SCOTT
BY:   DAVID R. SCOTT, ESQ.,
For the Plaintiffs.

LEBOEUF, LAMB, GREENE & MACRAE
BY:   RALPH C. FERRARA, ESQ.,
        ANN M. ASHTON, ESQ.,
For the Corporate Defendants.

9

MAYER, BROWN, ROWE & MAW
BY:   BRUCE M. BETTIGOLE, ESQ.,
For Defendant Watts.

11

FOLEY & LARDNER
BY:   NANCY J. SENNETT, ESQ.,
For Defendant Boynton.

13

SMYSER KAPLAN & VESELKA
BY:   LARRY R. VESELKA, ESQ.,
For Defendant Thomas, Jr.

15

DEWEY BALLANTINE
BY:   MIKE STENGLEIN, ESQ.,
For U.S. Trust.

17

STEPHEN TSAI, ESQ.,
For Jay Lambert.

19

20

21

22

23

24

25

JOANNE M. CARUSO, CSR, CRR,   OFFICIAL COURT REPORTER, NEWARK, N.J.

3

August 22, 2005

Page 2

lancaster82205
2          THE COURT:   Good morning.

3          The Court is prepared to proceed with the fairness

4     hearing in the matter of In Re Royal Dutch/Shell Transport

5     ERISA litigation.

6          I apologize in the first instance.  I think I'm

7     getting over a case of laryngitis rather than contracting one,

8     but nevertheless, this may be a blessing in disguise.  You may

9     not listen to me as much as might otherwise be the case.

10         In any event, I'll take appearances first on behalf

11    of the plaintiffs.

12         MR. DePALMA:   Joseph DePalma of Lite, DePalma for the

13    plaintiffs.

14         Your Honor, I'd like to introduce co-lead counsel,

15    Robert Harwood.

16         MR. HARWOOD:   Good morning.

17         MR. FRIEDMAN:   Brad Friedman from Milberg Weiss.

18         MR. SCOTT:   Good morning.

19         Daivd Scott, from Scott & Scott.

20         MR. DePALMA:   With the Court's permission, we would

21    like to split the argument.  Mr. Harwood is prepared to

22    address the fairness of the settlement and Mr. Friedman the

23    fee issues, if that is okay.

24         THE COURT:   Counsel, the gentlemen to your immediate

25    right, I didn't catch the name.

JOANNE M. CARUSO, CSR, CRR,  OFFICIAL COURT REPORTER, NEWARK, N.J.

4

1          MR. SCOTT:   David Scott, Scott & Scott.

2          THE COURT:   Thank you.

3          Counsel?

lancaster82205
```
 4          MR. FERRARA:  Ralph Ferrara, appearing for the

 5    corporate defendants.

 6          MS. ASHTON:  Ann Ashton, also from LeBoeuf, Lamb.

 7          THE COURT:   We have some applications for admissions

 8    pro hac and persons who have sought to present positions on

 9    behalf of objectors.

10          We'll continue with that.

11          MR. BETTIGOLE:  Bruce Bettigole for Sir Philip Watts.

12          MS. SENNETT:  Nancy Sennett for Judith Boynton.

13          MR. MORIN:  Phil Morin for defendant Pervis Thomas,

14    Jr.

15          MR. VESELKA:  Larry Veselka.  I'm the subject of one

16    of the pro hac motions.

17          THE COURT:  Thank you.

18          MR. VESELKA:  On behalf of Pervis Thomas, Jr.

19          THE COURT:  You're Mr. Thomas?

20          MR. THOMAS:  Yes.

21          THE COURT:  Welcome.

22          Mr. Veselka, I'll deal first with your motion to be

23    admitted pro hac on behalf of Mr. Thomas.  I've read the

24    papers involved.

25          Is there any objection on behalf of the other parties
```

JOANNE M. CARUSO, CSR, CRR,  OFFICIAL COURT REPORTER, NEWARK, N.J.

5

```
 1    to the case?

 2          MR. DePALMA:  There is no objection.

 3          MR. FERRARA:  No, your Honor.

 4          THE COURT:  Thank you.

 5          Your papers are in order.  I'll sign the order.
```

lancaster82205

6  welcome to this court.

7          MR. VESELKA:  Thank you, your Honor.

8          THE COURT:  Mr. Stenglein?

9          MR. STENGLEIN:  Yes.

10          THE COURT:  will you join the Court in the well,

11  please? Find a seat wherever you can.

12          MR. STENGLEIN:  Thank you, your Honor.

13          THE COURT:  Mr. Stenglein, I have your application

14  for admission pro hac on behalf of U.S. Trust Company.  Is

15  that correct?

16          MR. STENGLEIN:  Correct.

17          THE COURT:  I note that you're being moved by Mr.

18  Krovatin who is one of the best advocates in this entire

19  district.  If he were here, I was going to ask him if he

20  needed your help, but since he isn't, I won't.

21          Your papers are in order.

22          Any objection to the admission of Mr. Stenglein pro

23  hac in this case?

24          MR. DePALMA:  No objection.

25          MR. FERRARA:  No.


JOANNE M. CARUSO, CSR, CRR,  OFFICIAL COURT REPORTER, NEWARK, N.J.

                                                      6


1          THE COURT:  Thank you.

2          I'll sign the order.

3          MR. STENGLEIN:  Thank you.

4          THE COURT:  Now, we had an objection filed on behalf

5  of one Jay Lambert by a Stephen Tsai.

6          MR. TSAI:  That's me.

7          THE COURT:  You're present, sir?

lancaster82205

8          MR. TSAI:  Yes, sir.

9          THE COURT:   I'll enter your appearance.

10         MR. TSAI:  Stephen Tsai, appearing for class member

11  and objector, Jay Lambert.

12         THE COURT:   Thank you.

13         I received an objection by letter from a William S.

14  Gill of Kingwood, Texas, who apparently was not represented by

15  counsel and presented a position to the Court pro se

16  contesting only the amount of the allowance of plaintiffs'

17  attorneys' fees in this case.

18         Is Mr. Gill in court or anyone on his behalf?

19         All right.  That's an issue that's common to many of

20  the objections advanced today.  We'll address that in turn.

21         Are there any other persons present here in court who

22  are lodging objections to the terms of the settlement in this

23  matter?

24         Court notes no presentation.

25         Mr. Tsai, I'll hear you first on behalf of Mr.


JOANNE M. CARUSO, CSR, CRR,  OFFICIAL COURT REPORTER, NEWARK, N.J.

7


1  Lambert.

2          I've read your papers, of course, as well as those

3  submitted in response and I'll hear anything you would like to

4  add at this time.

5          MR. TSAI:  At this point, I'll just highlight a few

6  main points, I'm not going to belabor the Court's time.

7          We feel, your Honor, that there are certain

8  deficiencies in the notice and also in the release.  The

9  notice, your Honor, does not provide enough information about

lancaster82205

10 how many class members there are, how many employees there

11 are, what is the aggregate value of the settlement, what are

12 the damages that are computed such that a class member could

13 determine what is the value of the settlement to him or her in

14 terms of percentage of losses.

15        THE COURT:   Let us assume for the moment that I

16 would accept your argument, at least in part. We've had

17 papers submitted here in response to those objections which I

18 believe set forth a valid estimation of the potential number

19 of class members, that have talked in terms of what would

20 appear to be a reasonable maximum recovery of $115 million in

21 this case by the plaintiffs' own calculation.

22        Frankly, I haven't -- I don't believe you specified

23 much about what the deficiencies in the plan of allocation,

24 which I reread not ten minutes ago and which seem fairly

25 explicit on its face.  Have any of the papers that have been

JOANNE M. CARUSO, CSR, CRR,   OFFICIAL COURT REPORTER, NEWARK, N.J.

8

1 filed here in answer to some of the objections that you have

2 raised, in fact, answered them adequately?

3        MR. TSAI:   Your Honor, they seem to be fairly -- I

4 would just say that they're estimates only, one person's best

5 estimate. Your Honor, we feel that more specific information

6 be more appropriate.

7        THE COURT:   Are you aware of the complexities

8 involved in this matter in connection with the terms of the

9 release, potential losses are?

10        MR. TSAI:   Sorry to interrupt.

11        I'm aware that it is very complex, yes.

Page 7

lancaster82205

12          THE COURT:  Anything further?

13          MR. TSAI:  Your Honor, we also felt that the

14   release's overbroad.  It seemed to release not only the

15   defendants, but also related parties and entities which have

16   privity with the defendant and the parties related to it,

17   perhaps possibly for claims or causes of action that are not

18   related to the subject matter of this litigation.

19          THE COURT:  Well, are you referring to specifically

20   to the Texas action or a greater overbreadth of the release?

21          MR. TSAI:  I'm sorry.

22          THE COURT:  Are you referring specifically to the

23   Texas action or to the general overbreadth of the release?

24          MR. TSAI:  The general overbreadth.

25          THE COURT:  Thank you.


JOANNE M. CARUSO, CSR, CRR,  OFFICIAL COURT REPORTER, NEWARK, N.J.

9


1          Anything further?

2          MR. TSAI:  Nothing.

3          THE COURT:  Thank you.

4          Counsel, in support -- as far as the deficiencies

5   raised by Mr. Lambert regarding anything other than the scope

6   of releases, this Court determines that they have not been

7   substantiated here.

8          The Court, in the course of its ultimate findings of

9   fact and conclusions of law, will address the adequacy of the

10   notice and its terminology.  Excuse me, I may have taken a

11   step in advance.  It doesn't appear that other objectors here

12   are joined, at least in writing, in the objections by Mr.

13   Lambert.

Page 8

lancaster82205
14          Do any of the other objectors, in quotes, here

15   endorse or want to be heard further on the Lambert objection?

16   I note none.

17          I'll continue with my analysis.

18          So the Court's findings of fact and conclusions of

19   law will encompass the determinations with regard to the lack

20   of merit in the Lambert allegation.

21          What about the question of scope of releases,

22   however?  While I'm not inclined to feel that that is

23   overbroad under the entire circumstances of this case, I think

24   I would like a response on that point.

25          I'll be happy to hear one on behalf of the

JOANNE M. CARUSO, CSR, CRR,  OFFICIAL COURT REPORTER, NEWARK, N.J.

10

1   plaintiffs, perhaps with a synopsis with the scope of releases

2   because they are rather lengthy documents.

3          MR. HARWOOD:  It is, your Honor.  If it pleases the

4   Court, Robert Harwood, co-lead counsel.

5          The releases release agents and others in privity

6   with the defendants is the objection that Mr. Lambert has

7   lodged without excluding certain actions that are not part of

8   the lawsuit, he says.  But, in fact, I think the release's

9   narrowly tailored to include only the claims that were

10   asserted or could have been asserted in this lawsuit.  He also

11   argues that --

12          THE COURT:    And in the Texas action as I understand

13   it.

14          MR. HARWOOD:  I was about to mention the Texas

15   action.  He also mentions that we are releasing valuable

Page 9

lancaster82205

16    claims that could be asserted in the Texas action.  My firm

17    filed the Texas action.  The Texas action is a duplicate, a

18    carbon of the action pending in this court, and it's most

19    likely if we had pushed, if there was a need to push the Texas

20    action, which there isn't, the defendants would have resisted

21    fighting a war on two fronts and the Texas action would have

22    been either dismissed, stayed or most likely transferred to

23    your Honor, which is the way it should be.

24            So this release, in addition, was scrutinized by the

25    independent fiduciary U.S. Trust and they seem satisfied with


JOANNE M. CARUSO, CSR, CRR,   OFFICIAL COURT REPORTER, NEWARK, N.J.

11


1    the scope of the release.

2            The release was a document, I can tell your Honor,

3    that was contentiously negotiated over.  My co-counsel and I

4    scrutinized that language to make sure that we were releasing

5    only the claims that could have been asserted in this action.

6    Indeed, we vetted that release not only with the Court, with

7    the approval phase, but we vetted that release with the

8    counsel, lead counsel in the parallel securities class action

9    because we wanted to make sure that they wouldn't come in and

10   say you're releasing claims that we're asserting.  That

11   frequently happens.

12           Mr. Bernstein, the Bernstein Liebhard firm was

13   satisfied with the scope of the language of the release, that

14   it wasn't overbroad and wasn't throwing in claims that there

15   was no right.

16           THE COURT:   Transgressing over into the claims that

17   were in the securities action?

lancaster82205

18        MR. HARWOOD:   That's right.

19        THE COURT:   Anything further?

20        MR. HARWOOD:   Thank you.

21        THE COURT:   This Court agrees.  The Court also

22   determines that the release is appropriate, sufficiently

23   comprehensive to resolve and, where appropriate, bar claims

24   that are the subject of the settlement, but also determines

25   that it is sufficiently clear with regard to its terms and not

JOANNE M. CARUSO, CSR, CRR,  OFFICIAL COURT REPORTER, NEWARK, N.J.

12

1   overbroad as argued on behalf of Mr. Lambert.

2        There was, once again, as I said, the proposed

3   findings of fact and conclusions of law, which I'll ask the

4   parties to prepare jointly for the Court at the conclusion of

5   this hearing, should indicate that ruling and its basis.

6        I was advised in papers submitted on behalf of the

7   plaintiffs that a Mr. McGuinniss, who hasn't filed any papers

8   in the court as such, did raise a question with regard to

9   perhaps some deficiency or failing in the settlement because

10   of the fact that the taxability of funds coming to him through

11   this settlement and, of course, through whatever fund he

12   participated in was taxable, whereas those which might be

13   payable to him directly in the course of the lawsuit would

14   not.

15        No one appears on Mr. McGuinniss' behalf and the

16   Court believes that the plaintiffs and defendants both have

17   adequately answered that question; namely that the

18   beneficiaries and recipients of the funds from this settlement

19   are, in fact, the Shell Funds, themselves, so we were not

Page 11

lancaster82205
20  dealing with the prospect of an individual distribution in any

21  case.

22      The taxability, of course, of the ultimate

23  distribution of a portion of the settlement funds here to Mr.

24  McGuinniss or anyone else, among other things, is going to be

25  governed, I presume, by the terms of the fund itself and maybe

JOANNE M. CARUSO, CSR, CRR,  OFFICIAL COURT REPORTER, NEWARK, N.J.

13

1  their investments and also whatever applicable state and

2  federal tax laws would apply.

3      The Court also denies any objections based upon Mr.

4  McGuinniss' position.

5      I'd like to hear now from counsel on behalf of Mr.

6  Thomas.  I have read your papers, sir.  I'd be happy to hear

7  anything you would like to emphasize.

8      MR. VESELKA:  May it please the Court, Larry Veselka,

9  your Honor.  I appreciate this opportunity.

10      Mr. Thomas appreciates this opportunity.  He

11  understands the somewhat novel nature of his position, but

12  it's a matter of some seriousness to him.

13      Every defendant is entitled to make their own

14  decisions with regard to the process when they're accused of

15  violating fiduciary duties that are crucial to their daily

16  activities and their profession.  It's a serious charge

17  against him.

18      As the Court notes from our papers, Mr. Pervis does

19  not object to the amount of the settlement or most of the

20  terms of the settlement.  He objects mainly that he did not

21  see and have an opportunity to find and decide and approve the

Page 12

lancaster82205

22  final terms of the settlement and would have wanted to have

23  had other treatment.  Therefore, he objects to the statement

24  that he has approved the settlement.

25          He would ask that he be removed as a party signatory

JOANNE M. CARUSO, CSR, CRR,  OFFICIAL COURT REPORTER, NEWARK, N.J.

14

1  to the settlement and would have wanted to have been, as Mr.

2  Jeroen Van der Veer was, dismissed.  The plaintiffs' response

3  itself in trying to justify their fees explains the task, in

4  trying to explain the benefits that they've brought to the

5  class the problems they were facing.

6          Though Mr. Thomas, as plan administrator, is clearly

7  a fiduciary, a matter he takes seriously and why any

8  allegations of his breaching those fiduciary duties is very

9  serious to him and any implication --

10          THE COURT:  Let me interrupt you.

11          There has been time, of course, since the papers were

12  filed.  Mr. Thomas, presumably with your assistance or other

13  counsel, has had the opportunity to review those papers and

14  let us assume for the moment that he did not have the

15  opportunity to either review or actually approve for execution

16  by his then counsel the proposed final settlement papers and

17  all of their facets.

18          Does he remain opposed to that settlement including

19  his present status in it, or is that not a fair question and

20  should I be measuring this from the time of the purported

21  execution of that consent rather than the latter?

22          MR. VESELKA:  I believe it's a fair question because

23  the Court and various parties engage in these types of

Page 13

lancaster82205
24  litigation on a regular basis are used to proceeding in a

25  certain way. Why Mr. Thomas persisted after seeing the terms

JOANNE M. CARUSO, CSR, CRR,  OFFICIAL COURT REPORTER, NEWARK, N.J.

15

1  in wanting to raise the motion to reform is because he, as an

2  individual, and as a professional fiduciary, considered it a

3  serious matter that he was not given the opportunity to

4  participate in the final approval because in so doing, he had

5  hoped that he would have been able to negotiate a similar

6  treatment as Mr. Jeroen Van der Veer, if I'm pronouncing that

7  properly, which would he believes mattered significantly to

8  his professional standing.

9          If there were reasons for the benefit of the plan or

10  for reasons for benefit of his employer that he needed to be

11  in the settlement in these various ways, it should have been

12  presented to him to make his choice because he was not

13  presented with the final package to know the specific terms.

14  He never gave that approval.

15          Therefore, that's why we think it is still a matter,

16  even though it's outside the norm of this process, that it is

17  a matter of importance to him individually that the settlement

18  be reformed to reflect that he's not -- that he did not

19  authorize it in that form and he's not a party signatory to

20  it, and he would like to have it reflect that he be dismissed.

21          And the Court need not worry about Rule 23 notice

22  requirements because the Court only needs to provide such

23  notice as is necessary, and the entire class was given a

24  notice that presented a plan where he would be dismissed with

25  prejudice and released at the conclusion, under the terms of

Page 14

lancaster82205

JOANNE M. CARUSO, CSR, CRR,  OFFICIAL COURT REPORTER, NEWARK, N.J.

16

1   the stipulation and settlement.

2          So rather he's reflected as having been dismissed in

3   the manner as Mr. Jeroen Van der Veer or in the manner as

4   presently written makes no substantive difference to members

5   of the class.  The fund will still flow to them, but it did

6   matter to him.

7          THE COURT:   All right.

8          I think it's bought out in the plaintiffs' papers, I

9   suppose is inherent in the argument you just made in support,

10  they say well, there is no damage to Mr. Thomas because he's

11  not being asked to pay any money.  Your point is there is no

12  adverse impact on the settlement of the settlement funds

13  because if he's released based upon lack of authority to have

14  the document executed on his behalf, then neither the fund nor

15  the settlement nor the certification of the class or anything

16  else is in peril either.  Is that your point?

17         MR. VESELKA:  Yes, your Honor.

18         THE COURT:   Okay.

19         MR. VESELKA:  In response to that specific point, the

20  technical language, it is obviously not the perception of any

21  of the parties on the subject, the technical language does

22  provide for him as one of the defendants to make the payments.

23  Now, obviously he's not paying $90 million.

24         This is one of the reasons he would like to not be

25  listed as a named defendant when it's the named defendant

JOANNE M. CARUSO, CSR, CRR,  OFFICIAL COURT REPORTER, NEWARK, N.J.

Page 15

1 Shell. That payment is going to come from the corporate
2 defendant. That's understood by the parties, but that's not
3 the way it's drawn up. So that's one of the reasons that he
4 would like to be listed not as being at the time of the
5 settlement a named defendant as part of that stipulation.

6 The Court -- the stipulation of settlement itself,
7 one other argument to make, your Honor, was that the Court
8 can't change a settlement. Stipulation of settlement itself
9 reflects that the Court can reform or make changes because the
10 parties reserve the right to decide, depending upon what
11 changes or modifications are made, to determine whether
12 they're material and whether to go forward with the settlement
13 or not.

14 The negotiations themselves envision, and the Court
15 has the inherrent authority pursuant to Rule 23 to be able to
16 make those changes.

17 Finally, we'd like to draw attention to the Court the
18 decision of the Superior Court of New Jersey, Appellate
19 Division in Amatuzzo v. Kozmiuk, at 305 New Jersey Superior
20 469 and that's 703, Atlantic 2d., from 1997; the decision
21 where the Court said even though an attorney may have apparent
22 authority, that's only a presumption. The apparent authority
23 cannot come from actions, words soley of the attorney. There
24 must be the party itself that must provide grounds for the
25 apparently authority and only that would still only be

JOANNE M. CARUSO, CSR, CRR, OFFICIAL COURT REPORTER, NEWARK, N.J.

18

Page 16

lancaster82205

1  apparent authority.  It's a presumption that can be overcome.

2         Mr. Thomas' affidavit which has been submitted to the

3  Court, which we would argue removes that presumption and that

4  that would provide justification under New Jersey authority

5  applicable to this stipulation of settlement to allow the

6  Court to make the reformation, to remove the deletion to his

7  having authorized the settlement and delete paragraph 58(b)

8  out.

9         THE COURT:  Thank you.

10        Before I hear on behalf of counsel either for the

11 plaintiffs or the defendants, counsel who appear here on

12 behalf of the other objectors, et cetera, do they take any

13 positions on the application on behalf of Mr. Thomas?

14        I hear none.

15        I'll hear from the plaintiffs in response to that

16 application.

17        MR. HARWOOD:  Again, unfortunately, this valuable

18 settlement has been sucked up into a dispute between Mr.

19 Thomas and his former counsel, the Cleary, Gottlieb firm.  At

20 the risk of sounding too colloquial, here's what's really

21 going on:  One of the named defendants was Mr. Jeroen Van der

22 Veer.  As the settlement process was coming to fruition, and

23 we were negotiating final round of settlement documents, we

24 were approached and asked to let Mr. Van der Veer out.  He's

25 in a different position, he had different responsibilities and

JOANNE M. CARUSO, CSR, CRR,  OFFICIAL COURT REPORTER, NEWARK, N.J.

19

1  obligations and we did that and we said at the time, Mr. Van

2  der Veer, but nobody else.  Subsequently everybody else came,

Page 17

lancaster82205

3   as you might expect, and we said no.

4         We said specifically no to Mr. Thomas not because we
5   have it in for him, your Honor. He seems like a perfectly
6   nice gentleman, but he was a plan fiduciary. He was the only
7   named fiduciary in the case for the plans and everybody else
8   was a so-called de facto fiduciary. And had the motions to
9   dismiss been decided, he was certainly the most likely
10  defendant to remain in the case before all the other
11  defendants.

12        So he was given that knowledge. The settlement
13  memorandum of understanding was entered into and we completed
14  our additional and necessary discovery. Mr. Thomas at the
15  time was still represented by the Cleary firm. Mr. Thomas sat
16  for a deposition in New York, represented by the Cleary firm.

17        From our perspective, the Cleary firm had full
18  appearance and apparent authority to continue to negotiate and
19  to sign the documents on behalf of their client, Mr. Thomas,
20  and they did.

21        I think Mr. Thomas has maybe the largest case of
22  buyer's remorse I've ever come across, but he had misgivings,
23  but I don't understand what he wants because when the
24  settlement is approved, he's going to get a dismissal with
25  prejudice. He is not required to pay a single penny. All he

JOANNE M. CARUSO, CSR, CRR,  OFFICIAL COURT REPORTER, NEWARK, N.J.

20

1   is required to do is to give us a mutual release, and as I
2   understand it, and as his papers make clear, he doesn't oppose
3   giving us that release. So I don't know how to go about
4   satisfying Mr. Thomas. As long as we get that mutual release,
                              Page 18

lancaster82205

5  we're satisfied and I think he is bound by the apparent

6  authority that his counsel had.  If the settlement can be

7  reformed and the mutual releases are forthcoming, we take no

8  position on that.

9         THE COURT:  As I recall also, the terms of the

10  settlement include a recitation of no acknowledgement of

11  liability whatsoever on behalf of any defendant, correct?

12        MR. HARWOOD:  Correct, your Honor.

13        There are other defendants who could also be

14  characterized as professional fiduciaries.  I believe Miss

15  Boynton was a fiduciary of the Polaroid ERISA plans.  He's not

16  being singled out and he doesn't stand alone.

17        THE COURT:  Remind me, when are the settlement funds

18  payable?  Are they being paid in a lump sum?

19        MR. HARWOOD:  A lump sum with interest, I think 30

20  days after the settlement is finally approved.  Thirty days

21  after the settlement becomes final, no longer appealable.

22        THE COURT:  Is it at that point that the dismissals

23  of the individual defendants will become final or do they

24  become final upon the Court's entry of an order concluding

25  today's proceedings?

JOANNE M. CARUSO, CSR, CRR,  OFFICIAL COURT REPORTER, NEWARK, N.J.

                                                          21

1         MR. HARWOOD:  Probably 30 days.

2         MR. FRIEDMAN:  I believe, your Honor, when the

3  settlement is no longer subject to appeal.

4         THE COURT:  Fine, thank you.

5         MR. HARWOOD:  One last point, your Honor.

6         The Amatuzzo case that was cited to you by counsel is
                          Page 19

lancaster82205

7  so distinguishable. The client voiced his vigorous objection,
8  refused to sign the settlement agreement. It was clear from
9  day one that he was not on board and counsel for plaintiffs
10 knew it. we did not.
11        Thank you, your Honor.
12        THE COURT:   Thank you.
13        Mr. Veselka, anything to add?
14        MR. VESELKA:  Very briefly.
15        I agree with Mr. Harwood that any concerns between
16 Mr. Thomas and his previous counsel are between them and are
17 not matters that need to be dealt with here.
18        The settlement itself is only signed on I believe
19 July 5, signed July 5, presented to the Court on July 8th.
20 Regardless of why or whether in the dispute with his previous
21 counsel he was entitled to see the final version and/or to see
22 if he could be dismissed as Mr. Jeroen Van der Veer was, at
23 the time he did not get that opportunity to present that and
24 to insist on it. That's why it's so important to him, because
25 he is a fiduciary.

JOANNE M. CARUSO, CSR, CRR,  OFFICIAL COURT REPORTER, NEWARK, N.J.

22

1        Now, in this release, this case is releasing and he
2  would be released even if this is granted, he would be covered
3  by the releases, as are the other fiduciaries which are
4  trustees which are fiduciaries, which are parties to the Texas
5  case. He's also a party to the Texas case. So he's going to
6  be covered by the releases there as well. He does, as they
7  stated, he does not object to giving the mutual release.
8        what he wants is merely to reflect paragraph 58(B)
                         Page 20

lancaster82205

9   because he did not give approval, to preserve the sanctity of

10  the process of each individual involved in litigation, to be

11  not listed as a named defendant that's one of the people

12  making the payments and, therefore, we submit that

13  respectfully to the Court.

14          THE COURT:    Thank you.

15          Mr. Thomas' objection is denied, essentially on two

16  grounds.  Once again, I'll leave it to the parties to amplify

17  these remarks in the proposed findings of fact and conclusions

18  of law.

19          First, the Court determines that Mr. Thomas' prior

20  attorney was clothed with apparent authority to execute the

21  settlement agreement on his behalf.  Mr. Thomas also was

22  adequately informed of the nature and the state of the

23  proceedings leading up to the settlement agreement so that he

24  presumably was in a position to make his position very clear

25  to his own attorney if, indeed, there were objections to the

JOANNE M. CARUSO, CSR, CRR,  OFFICIAL COURT REPORTER, NEWARK, N.J.

23

1   form of settlement and/or his particular treatment.

2           As we know, the genesis of this argument is that he

3   feels he should have been treated as Mr. Van der Veer was, who

4   was dismissed even prior to the present stage.

5           Secondly, the Court determines that there is no true

6   tangible detriment enuring to Mr. Thomas as a result of the

7   fact that he was not dismissed previously as opposed to

8   remaining in this case as a named defendant through and

9   including the time of the payment of the settlement funds from

10  other sources that would then lead to the final dismissal of

Page 21

lancaster82205

11  himself and all defendants.

12          In connection with that, as his counsel acknowledges,
13  he will receive the full benefit of the releases that are
14  extended to him and for that reason alone will carry no
15  baggage away from this litigation, certainly nothing tangible
16  or measurable.

17          Finally, the Court determines that Mr. Thomas is not
18  left without recourse.  If he has sustained some injury, be it
19  to reputation, the need to incur additional expenses in order
20  to present himself to the Court or otherwise as a result of
21  the inappropriate actions of his prior attorneys without
22  authority, in fact, if indeed that is the case, he has
23  recourse against that attorney to be made whole.

24          That's where his main dispute lies, that's where his
25  opportunity for remedies lie and, accordingly, the application

JOANNE M. CARUSO, CSR, CRR,  OFFICIAL COURT REPORTER, NEWARK, N.J.

24

1  to have the settlement revised with regard to Mr. Thomas'
2  status before this Court is denied.

3          We'll now move ahead I believe to the final item on
4  today's list which is the objections that have been raised to
5  the attorneys' fees sought.

6          Before I do that, is that the one remaining item on
7  the menu?  I believe it is based upon things that have been
8  tendered here.

9          I think at this point I'd like to hear on behalf of
10  U.S. Trust.  Let's see what your position is on this and then
11  I'll permit others to be heard as the matter presses.

12          MR. STENGLEIN:  Good morning.  Mike Stenglein, U.S.
                                Page 22

lancaster82205

13    Trust.

14        Anything that I would say would really be just

15    repetitive of what's in our papers.  I will offer no

16    additional argument at this time.  If the Court has any

17    questions about our papers, I'd be happy to try to answer

18    them.

19        THE COURT:    All right.

20        Your view, I guess, essentially is that at the very

21    least this demand ought to be closely scrutinized in

22    connection with the population of ERISA class action

23    settlements with which you're acquainted.  This might appear

24    to be on the high side.  Is that a fair recap?

25        MR. STENGLEIN:    Well, it's a fair recap and I would

JOANNE M. CARUSO, CSR, CRR,  OFFICIAL COURT REPORTER, NEWARK, N.J.

25

1    add to that that, and I think both parties agree, that also

2    securities class action settlements would also provide the

3    Court with information about what a reasonable attorney fee

4    award would be.

5        In the most recent analysis performed by NERA

6    suggests for a settlement this size, 26 percent is the

7    appropriate number.  Those two data points we wanted to put

8    before the Court for purposes of its decision process.

9        THE COURT:    All right.

10        Counsel on behalf of any of the objectors, Mr.

11    Veselka, do you wish to be heard on this issue?

12        MR. VESELKA:    No, your Honor.

13        THE COURT:    Thank you.

14        Mr. Tsai, do you wish to be heard further on this
                              Page 23

lancaster82205

15  issue?

16          MR. TSAI:  No, your Honor.

17          THE COURT:  Nothing further.

18          Fine.  Anything on behalf of counsel for defendant

19  Boynton?

20          MR. BETTIGOLE:  Nothing.

21          MS. SENNETT:  Nothing, your Honor.

22          THE COURT:  Thank you.

23          Mr. DePalma, I'll hear from you on that point.

24          Mr. Friedman.

25          MR. FRIEDMAN:  Thank you, your Honor.


JOANNE M. CARUSO, CSR, CRR,  OFFICIAL COURT REPORTER, NEWARK, N.J.

26

1           I would begin I guess by saying there really appears

2  to be no dispute among any of the parties, including U.S.

3  Trust, that the Common Funds Doctrine applies to this fee

4  request and that the fees therefore should be based on a

5  percentage of the common fund.

6           As we say in our brief, the general range in this

7  circuit is 19 to 45 percent.  The Court has discretion where

8  to set the fee, but is to go through the seven Gunter factors.

9  The factor that U.S. Trust points to, of course, is only one

10  of those seven factors.  With respect to most of the other six

11  factors, they actually do address the factors and find that

12  those factors weigh in our favor.

13          With the Court's permission, I'd like to go fairly

14  quickly but through the seven factors because I think they're

15  all relevant and not just one.

16          THE COURT:  Please do.
                          Page 24

lancaster82205

17          MR. FRIEDMAN: The first factor is the size of the
18   fund and the number of people that are benefiting. That
19   factor we think is strongly in our favor. This is one of the
20   largest ERISA settlements ever achieved not only on an
21   absolute basis, but as a percentage of the class damages which
22   is a very significant issue.

23          As far as the number of people benefited, we have
24   over 40,000 people which is also a very significant number.
25   U.S. Trust seems to agree that that factor weighs in our

JOANNE M. CARUSO, CSR, CRR,  OFFICIAL COURT REPORTER, NEWARK, N.J.

27

1   favor. They write in their objection "the fund is a large one
2   and the number of beneficiaries are many."

3          The next factor we get to is the presence or absence
4   of substantial objections to the settlement terms or the fee
5   request. Here we had over 42,000 notices and only three
6   actual class members have objected, which is about less than
7   one one-hundreth of a percent and those three class member
8   objections we think really don't even fall within the category
9   of being substantial.

10          We have Mr. Thomas' objection which is really an
11   effort to reform the settlement, and then we have U.S. Trust's
12   objection to the fee request which I won't say is not a
13   substantial issue or substantial reduction, but we think
14   they're wrong for reasons --

15          THE COURT:  I think they brought it out of what they
16   perceive is their duty given their position they're assigned.

17          MR. FRIEDMAN: Yes, they have that duty and I don't
18   begrudge it.
                    Page 25

lancaster82205

19        When you go through their objection, what you see is
20   the fund's a large one.  They say the number of beneficiaries
21   are many.

22        They also go through and note, and we appreciate
23   this, that the settlement was rapidly achieved; they recognize
24   "the skill of plaintiffs' counsel is evident and exemplary."
25   They characterize the underlying litigation as, quote unquote,

JOANNE M. CARUSO, CSR, CRR,  OFFICIAL COURT REPORTER, NEWARK, N.J.

28

1   complex and they note that the settlement "was achieved with
2   diligence and speed." These are all Gunter factors.  These
3   are all things that weigh in favor of the application.

4        Of course, ultimately both in their objection and
5   more importantly in their independent fiduciary's report, they
6   conclude the settlement is reasonable even net of attorneys'
7   fees, even net of full request, they think the settlement is
8   reasonable and the objection, I think they use the word
9   "fair." Obviously, we as plaintiffs' counsel think these are
10   statements that the Court ought to take into account when
11   deciding the application.

12        With respect to the skill and efficiency of the
13   attorneys involved, which is the third Gunter factor,
14   plaintiffs' counsel in this case moved the case to resolution
15   with near record speed, and I would submit achieved a result
16   that really speaks for itself; 78 percent recovery which is
17   what we believe we achieved in this case.  We think is really
18   extraordinary and the absolute amount makes it one of the
19   highest ERISA settlement amounts, if not the highest
20   settlement, in the history of ERISA.
                    Page 26

lancaster82205

21        Again, as I said, U.S. Trust agrees that this factor

22    weighs in our favor, saying the skill of plaintiffs' counsel

23    is evident and exemplary and the settlement was achieved with

24    diligence and speed.

25        The fourth factor is complexity and duration of the

JOANNE M. CARUSO, CSR, CRR,    OFFICIAL COURT REPORTER, NEWARK, N.J.

[]

29

1    litigation. Now, according to the Third Circuit's opinion in

2    G.M. Trucks, this factor is really intended to capture -- this

3    is language from the case, the probable costs in both time and

4    money of continued litigation.  Clearly, this ERISA case was

5    complex and because we were able to achieve such an early

6    settlement, it is necessarily the case that absent the

7    settlement, there's going to be a lot of continued litigation.

8        Again, U.S. Trust seems to agree this factor weighs

9    in our favor, recognizing that the underlying litigation was

10   complex and that the settlement was rapidly achieved.

11        These are all things they say in their papers.

12        THE COURT:    I don't think there's any doubt,

13   certainly not in my own mind, that had this litigation not

14   settled and eventually gone to the mat, it would have been an

15   extremely complex and difficult litigation, among other things

16   in terms of the assessment of fiduciary duties, whether or not

17   those duties were breached or abdicated and/or the

18   quantification of the relief affordable to respective class

19   members or a formula therefore.  No doubt about that.

20        MR. FRIEDMAN:    Okay.

21        THE COURT:    Please continue.

22        MR. FRIEDMAN:    Actually you've stolen a bit of my
                          Page 27

lancaster82205

23  thunder for the next factor which is the risk of nonpayment.

24  We invested millions of dollars and time in this case and

25  nearly a million dollars in real out-of-pocket expenses with

JOANNE M. CARUSO, CSR, CRR,  OFFICIAL COURT REPORTER, NEWARK, N.J.

30

1  no guarantee that we'd ever see any recovery at all.

2       Specific risks to this case were particularly high

3  because the law in this area is still developing, but included

4  all of the issues that your Honor just laid out, as well as a

5  serious standing issue. Many of the defendants raised

6  standing issues not being U.S. citizens and of course there's

7  also the ever-present problem of motion practice, motions to

8  dismiss, briefs for summary judgment, the need to rely on

9  experts, appellate practice.

10       As your Honor may be aware, just last week in the

11  State Farm litigation in Illinois, plaintiffs' counsel who had

12  achieved a billion dollar verdict after trying it and then had

13  that verdict reduced by the appellate court, just in the

14  Illinois Supreme Court the class decertified and the entire

15  verdict thrown out. So a decade of litigation, millions and

16  millions and millions of dollars both in time and

17  out-of-pockets all gone. Those lawyers will not see a cent

18  after decades of litigation.

19       There's a real risk of nonpayment in any of these

20  kinds of cases, but for the reasons your Honor set forth, I

21  think were particularly high here.

22       Now, U.S. Trust doesn't address these risks, but

23  instead contend that our risk was, quote unquote, was

24  significantly reduced by the Davis Polk report, claiming that

Page 28

lancaster82205

25  the Davis Polk report provided us with a road map.  We would

JOANNE M. CARUSO, CSR, CRR,  OFFICIAL COURT REPORTER, NEWARK, N.J.

                                                          31

1   respectfully suggest that the analysis there is wrong.

2             In this case, as your Honor knows, Shell restated the

3   amount of its proved oil reserves.  Now, that restatement

4   established that the accounting treatment was wrong and that

5   restatement, perhaps, reduced our risk somewhat because it did

6   establish that, in fact, the reserves were wrong.

7             The Davis Polk report then puts together a bunch of

8   e-mails which, in essence, establish or blames plaintiff in

9   the securities case will establish scienter.  Scienter is a

10  huge issue in the case, there is no doubt about that, but it's

11  not an issue.  Our issue's standing, existence of a fiduciary

12  duty, who breached the duty, perhaps negligence and damages,

13  the Davis Polk doesn't really help us with that stuff.

14            So in our case, in the ERISA case, the Davis Polk

15  report is really of minor, if any, significance.  Where it is

16  significant is in the 10b-5 securities litigation where they

17  have to fight over scienter, but we don't have that element of

18  our claim.

19            The sixth factor is time devoted to the case.  I

20  won't belabor that because I don't think anybody challenges

21  that.  We put in more than 18,670 hours, more than $6.8

22  million of lodestar and more than $726,000 in reasonable

23  out-of-pocket expenses, actual money out of our pockets.

24            This time was all expended in a concentrated time

25  period so that this case could be quickly concluded, which is

lancaster82205

32

1   significant because it means that we were precluded from
2   taking on other work. We didn't sort of spend a few hours a
3   day on this case and slip in a bunch of other stuff.
4           THE COURT:    On the other hand, through its early
5   conclusion you're now free to take on other work whereas your
6   time might be otherwise consumed in this case for several
7   years, correct?
8           MR. FRIEDMAN:  That's true.  That's true.
9           We do say in our papers for lodestar crosscheck
10  purposes, the result and multiplier of 4.4 which we show in
11  the papers is within the range and nobody is contesting that.
12          Where the rubber really seems to be hitting the road
13  is the seventh factor only which is the awards in similar
14  cases.  Now, as we show in our brief and our reply brief, our
15  request of one-third is consistent with awards in similar
16  cases, including as we show in the reply papers, cases with
17  bigger funds than this one.
18          But even if we were wrong about that and I'll explain
19  why we're right, that's only one factor and it's not the be
20  all and end all of the analysis.  For example, Judge Wolin
21  ruled in the Prudential litigation in his fee opinion on
22  remand from the Third Circuit, after the Third Circuit
23  remanded the fee back to him, Judge Wolin noted that the Third
24  Circuit held that the size of the recovery is not the only
25  factor in determining a fair fee award; other factors such as

JOANNE M. CARUSO, CSR, CRR,  OFFICIAL COURT REPORTER, NEWARK, N.J.

Page 30

lancaster82205

33

1   quality of counsel are also very significant and come into
2   play at any given time and so Judge Wolin wrote, "at any given
3   level of recovery, the percentage fee that Courts awarded has
4   varied." Quote, "there is no perfect correlation between the
5   appropriate percentage and size of the recovery."

6        We can't look only at the seventh factor.  Even if we
7   do, we think we're very, very strong on that factor.  U.S.
8   Trust's first argument is to the Court is don't look at the
9   full range of settlements that are out there in the universe,
10  put on the blinders and only look at the 15 ERISA class action
11  settlements, some but not even all of those having awarded
12  lower fees.  We think that's wrong for three reasons.

13       First, we don't think there's any reason in the
14  world, and U.S. Trust hasn't cited any, that the Court ought
15  to limit its analysis only to ERISA class actions.

16       Second, we think, and this is highlighted, we think a
17  15-case sample size is far too small.

18       Third, and perhaps most important, is that the U.S.
19  Trust's analysis just blindly pointing to these 15 cases fails
20  to account for the differences between those 15 cases and our
21  case here.  Unlike those cases, here the ERISA class is not
22  the tail being wagged by a 10b-5 dog.  Usually in these cases
23  the ERISA case just kind of hobbles along as a tail to the
24  securities case and gets settled when the defendants are ready
25  to settle the securities case.

JOANNE M. CARUSO, CSR, CRR,  OFFICIAL COURT REPORTER, NEWARK, N.J.

34

lancaster82205

1    Here, we pushed our case forward ahead of the
2  securities case, we got our briefing -- we got our
3  consolidated amended complaint on file and our briefing on the
4  motions to dismiss done while the securities plaintiffs were
5  still messing around filing and writing their own consolidated
6  amended complaint. We pushed forward with discovery while
7  they were doing the brief on motions to dismiss and we got our
8  case settled before those plaintiffs ever even got a decision
9  or I think even completed briefing on their motions to
10  dismiss. We pushed our case and we're not the tail of the
11  10b-5 dog which is different from the other cases.

12    Second, we got an unusually prompt settlement.

13    And, third, as I said before, we achieved a
14  settlement that is extraordinarily rich not only on an
15  absolute basis, but as a percentage of the class's losses. So
16  we believe that we are entitled to be rewarded for these
17  accomplishments and to get a higher percentage than was
18  recognized in those other 15 ERISA cases.

19    U.S. Trust then argues in the alternative that even
20  if all securities cases are considered, and, Judge, we think
21  that all cases, not just all securities cases, all cases
22  should be considered, they say even if all securities cases
23  are considered, a NERA study found that fee awards in
24  securities class actions where the settlement was between 25
25  and $100 million, average 26 percent.

JOANNE M. CARUSO, CSR, CRR,  OFFICIAL COURT REPORTER, NEWARK, N.J.

35

1    Again, we think there's three problems with the
2  argument. First, it ignores the specifics of those other

Page 32

lancaster82205

3  cases just like their ERISA argument, the 15-ERISA case

4  argument did.  For example, settlements in that range, 25 to

5  $100 million range typically are in huge, huge mega cases and,

6  therefore, reflect only a very small percentage of the class

7  damages.  There are cases where maybe the class lost a billion

8  dollars and a recovery of 25 or $100 million is mere pennies

9  on the dollar.

10        Here, we recovered 78 percent of the damages and as I

11  said, we think we deserve to be rewarded for that.  The later

12  dollars after all are the hardest dollars in negotiations to

13  get.  Those are the tough ones.  The defendants came in and

14  they knew what the damages were, they were arguing about the

15  market value of these cases.  Those last dollars are the tough

16  ones to get.

17        Second, the NERA study that U.S. Trust points to is

18  "contradicted by NERA's only slightly earlier study."  They

19  had a study a few years early in 1996, that finds that

20  "regardless of case size, fees average approximately 32

21  percent of the settlement."

22        "Third, U.S. Trust's reliance on the NERA study is

23  limited to averages."  It ignores the median, which is the

24  middle number if you were to lay them all out and the mode,

25  which would be the most frequent.

JOANNE M. CARUSO, CSR, CRR,  OFFICIAL COURT REPORTER, NEWARK, N.J.

36

1        The NERA study also ignores the median.  It does

2  address the mode, the most frequent.  The one U.S. Trust cites

3  to concedes that "33 percent is still the most frequent

4  percentage, requested in over 40 percent of cases."

Page 33

lancaster82205

5      Finally, in a separate but related argument, U.S.
6   Trust contends that the cases cited in our opening memorandum
7   are not entirely applicable because many of the cases cited
8   are smaller settlements. So we attempted to address that in
9   our reply brief by showing that there are any number of very
10  large settlements in which the Court awarded fees of at or
11  neared a third.

12      For example, there's a case from this district that's
13  very recent, within the last year, I think it was mid or late
14  November, before Judge Chesler, the Galanti v. Goodyear Tire &
15  Rubber case. That was a $300 million settlement,
16  substantially more than the settlement in this case.  Judge
17  Chesler awarded a 30 percent or $90 million fee.

18      So as I said at the outset, we believe the Court
19  ought to look at all seven of the Gunter factors.  Indeed,
20  although the fee is a matter in your Honor's discretion, I
21  think the Third Circuit requires that the Court go through all
22  seven of the Gunter factors.  We think all seven of those
23  factors weigh in our favor.

24      Essentially, five or six out of the seven we think
25  U.S. Trust agrees weigh in our favor and even with respect to

JOANNE M. CARUSO, CSR, CRR,  OFFICIAL COURT REPORTER, NEWARK, N.J.

37

1   comparables, I think when the Court really looks at them, the
2   Court will see that we did better than in those other cases.
3   So we think that we deserve to be on the high end, if indeed,
4   your Honor concludes we are on the high end.

5      THE COURT:    Thank you.

6      Any reply, counsel?

Page 34

lancaster82205
7       MR. STENGLEIN:  Just a short reply, your Honor.

8       We have attached the NERA study as exhibit 15,

9   actually 16 to our papers.  I'll just take issue with a couple

10  of points raised by Mr. Friedman.

11          He's making the assumption in here when he talks

12  about -- which is on page seven of the report, shows for

13  settlements of 25 to $100 million, 26 percent is the average

14  settlement -- average fee award.

15          He says -- he represented to the Court or I guess he

16  was assuming that in those settlements, in the NERA's study

17  that those percentages are based on settlements that are in

18  the billions of dollars.  No where in the NERA report is that

19  issue addressed, so that is for speculation.

20          It doesn't say, frankly, in here for the 26 percent

21  average that it finds for settlements of 25 to 100 million

22  what the claimed damages actually were in those cases, so that

23  is up to speculation.

24          Then as to his point on the NERA's settlement that

25  U.S. Trust doesn't address, that is as he refers to the mode,

JOANNE M. CARUSO, CSR, CRR,  OFFICIAL COURT REPORTER, NEWARK, N.J.

                                                    38

1   he says -- he told the Court, and it's in his papers, that

2   this 40 percent requested number, the interesting point on

3   that is that NERA does conclude that in 40 percent of the

4   cases, counsel requests a 33-percent recovery.  It doesn't

5   mean that in 40 percent of the cases a 33-percent recovery is

6   granted.  In fact, NERA makes clear the 25 to $100 million

7   settlement range, that 26 percent recovery is granted.

8           That's all, your Honor.

                    Page 35

lancaster82205

 9    THE COURT:    Thank you.

10        Court will take a recess until 11:30.  That clock is

11   of no use to you.  It's five minutes after 11.  We'll

12   reconvene at 11:30 and I'll have at least a brief oral

13   presentation and my decision on the counsel fee issue.

14        Thank you.

15        (Recess.)

16    THE COURT:    Remain seated, please, everyone.

17        Before concluding today on a more general note, I

18   will deal specifically with the application for counsel fees.

19        In doing so, I'm, indeed, consulting in depth the

20   particular factors set forth in the Third Circuit Gunter

21   opinion.  I realize these are not to be applied

22   formalistically, and I'll have more to say about that.

23        Let me take them in order.  The first is the

24   reference to the size of the fund and the number of persons

25   benefiting.  For the generation of a $90 million settlement

JOANNE M. CARUSO, CSR, CRR,  OFFICIAL COURT REPORTER, NEWARK, N.J.

39

 1   fund here, approximately 78 percent of the reasonable estimate

 2   of punitive damages I believe prepared on the plaintiffs' own

 3   behest, if my recollection serves me, it is considerable,

 4   certainly weighs in favor of an appropriate award for

 5   plaintiffs' counsel.

 6        We also have more than 40,000 class members have

 7   benefited.  That I think weighs perhaps on both sides of the

 8   equation.

 9        First, of course, there are a number of persons here

10   who are going to be benefiting by these recoveries, a sizable

lancaster82205

11 number who might otherwise have sustained losses, but

12 secondly, that also means that there are a large number of

13 persons who will be participating and who will be looking to

14 this fund to be made whole.

15 I think one has to be concerned, at least somewhat,

16 about the preservation of that portion of the fund which will

17 be available to them as opposed to counsel for the class who

18 are seeking an award as a percentage of the fund.

19 Secondly, the reaction of the class to the terms of

20 the settlement, including, of course, the proposed attorneys

21 fee of 33-and-a-third-percent of the $90 million.  Through the

22 absence of objections, with the few isolated instances that

23 have been addressed in this courtroom today, there has been

24 overwhelming approval or acknowledgement by class members of

25 the appropriateness of the settlement, including at least

JOANNE M. CARUSO, CSR, CRR,  OFFICIAL COURT REPORTER, NEWARK, N.J.

40

1 inferentially, the amount of the fee requested.  It's not as

2 if dozens and dozens of objectors emerged here contesting the

3 amount of the fee and the impact that that fee would have on

4 the fund available for their recovery.

5 U.S. trustees -- U.S. Trust Company, excuse me, as

6 the independent fiduciary that it is in this matter, validly

7 raised some objection and considerations for the Court and I

8 have done so.  On the other hand, even the U.S. Trust

9 indicated that it had no overall objection to the terms of the

10 settlement, the adequacy of the recovery for the plaintiff

11 class, even on a net basis.  In other words, even a net of 60

12 million would, in U.S. Trust's view, be a good settlement of

Page 37

lancaster82205

13  the class.

14       Item number three, the skill and efficiencies of the

15  attorneys. First, of course, the Court notes that the

16  attorneys in the firms involved in this matter and they are

17  highly experienced and highly skilled in matters of this kind.

18  Moreover, in this case it showed. Those efforts were

19  vigorous, imaginative and prompt in reaching the settlement of

20  this matter with a minimal amount of discovery, for instance,

21  all that was needed to make all parties fully informed and

22  without getting into a full-blown battle on threshold motions

23  as a prelude to settlement which is also the case. It was not

24  necessary here.

25       So both skill and efficiency were brought to the

JOANNE M. CARUSO, CSR, CRR,  OFFICIAL COURT REPORTER, NEWARK, N.J.

41

1  table here by counsel, no doubt about that.

2       I've already commented briefly on the complexity of

3  this litigation and its likely duration if it had gone through

4  all phases to try, and almost necessarily these matters to at

5  least one level of appeals. The issues would have been

6  complex. The litigation would have been extensive. Among

7  other things, the establishment of damages would have been an

8  equally complex matter.

9       Item number five talks about the risk of nonpayment,

10  to wit:  What risks were taken by plaintiffs' counsel about

11  the possibility of pursuing this action vigorously, ultimately

12  though based on the contingent fee arrangement with no

13  ultimate compensation, plus of course a substantial outlay of

14  expenses are not likely recoverable either. There were,

Page 38

lancaster82205
15  indeed, factual and legal impediments to the success of the

16  plaintiffs here and also to the detriment of their damages.

17          Needless to say, also, there were uncertainties with

18  regard to the trial and appellate process. That being said,

19  while I agree with plaintiffs' counsel that the Davis Polk

20  report is not a roadmap to success here in the ERISA

21  litigation, it certainly did assist plaintiffs in achieving a

22  basis for the assessment of liability and in large measure at

23  least the assessment of losses due to the impact on the Shell

24  stock, from the activities of those in the Shell security

25  litigation.

JOANNE M. CARUSO, CSR, CRR,   OFFICIAL COURT REPORTER, NEWARK, N.J.

42

1           I note we're dealing here only with allegations in

2  that matter which remains pending. I want to be cautious

3  there, but Davis Polk report surely was of some assistance

4  here and I think I can properly infer that that document,

5  perhaps among others, was a significant catalyst to the

6  settlement in this matter, even on behalf of the present

7  defendants.

8           Item number six talks in terms of the time devoted

9  and that's documented here. A sizable number of hours with

10  approximately $6 million plus in lodestar value, if the Court

11  were approaching the awarded fees on a lodestar basis rather

12  than as a proportion of the fund. Plaintiffs suggest that a

13  4.4 multiplier of this lodestar, if I were approaching the

14  case in this fashion, would have been appropriate here. I'm

15  inclined to disagree somewhat on that point.

16          Once again, albeit due to the abilities and the

Page 39

lancaster82205

17  diligence of counsel here, this case did settle in its earlier

18  stages. While I might be more inclined to apply a multiplier

19  of that sort to a lodestar in the case that went all the way

20  through to conclusion, I'm not sure that I would do so in a

21  case which settled early. I also don't feel that that

22  approach generates a disincentive to settlement.

23          We then get to the question of awards in similar

24  cases and all parties seem to acknowledge that that is, at

25  best, an inexact science. The statistics establish that a

JOANNE M. CARUSO, CSR, CRR,   OFFICIAL COURT REPORTER, NEWARK, N.J.

43

1   mode for request in the population of cases comparable to the

2   case at bar is somewhere in the vicinity of 33-and-a-third

3   percent. The Court doesn't find that particularly surprising.

4   Indeed, of course, it has a traditional relationship to

5   contingent fee arrangements in any number of actions.

6          As U.S. Trust pointed out today, what's applied for

7   doesn't necessarily become awarded. The cases cited by all

8   parties to this Court would seem to generate recovery in a

9   range of somewhere between 19 and 45 percent. The ERISA

10  population of cases on which U.S. Trust asks the Court to

11  focus is not the only one considered but it surely was worth

12  considering.

13         As I mentioned before, this is not an exact science.

14  Much of course has to be left up to the Court's own experience

15  and feel for what is fair, because what we are ultimately put

16  to here is a question of what award of counsel fees is fair

17  and reasonable, not only to reflect the efforts of plaintiffs'

18  counsel, but also in terms of the residue of the fund to be

Page 40

lancaster82205
19  remaining for the class members.

20      The Court notes that in the Weiss case and that is

21  Weiss v. Mercedes-Benz of North America, at 899 F. Supp. 1297,

22  1995, the very same counsel before this Court on the

23  plaintiffs' side sought an award of 15 percent. Frankly, that

24  award was -- that application was rather modest and the Court

25  allowed it, although against a different quantification of the


JOANNE M. CARUSO, CSR, CRR,  OFFICIAL COURT REPORTER, NEWARK, N.J.

                                            44


1   value of the settlement between that which had been tendered

2   by the plaintiffs.

3       The Court also notes that that fee was awarded over

4   and above the settlement fund or the settlements value.  In

5   other words, it was not taken out of the corpus of the fund

6   made available to the class members.

7       Thus, in this Court's view, considering all of the

8   Gunter factors, and once again realizing that it's ultimately

9   charge is fair and reasonable attorneys fee in this case, both

10  expressed in terms of the percentage allowed and of course the

11  absolute dollars of the recovery which are going to be

12  significant in any case, this Court allows attorneys fees of

13  25 percent against the $90 million or a figure of $22.5

14  million.

15      As I understand it, of course, there will be an

16  additional $1 million paid by defendants in expenses to

17  plaintiffs' counsel that is not to be taken from the fund but

18  is from an outside source.

19      I'll now turn back to the question of the order

20  approving the settlement in this case.  The Court determines

                            Page 41

lancaster82205

21  that the terms of settlement approved in all of its facets are

22  acceptable, fair, reasonable and are approved by this Court.

23          I have dealt with the respective objections tendered

24  here today and those ones stand and can be reflected in any

25  proposed findings of fact and conclusions of law submitted


JOANNE M. CARUSO, CSR, CRR,  OFFICIAL COURT REPORTER, NEWARK, N.J.

45


1  here.

2          I considered the factors sometimes known as the

3  Girsch factors, also recited and dealt with seriatim in the

4  weiss opinion and in doing so, have reached the decision which

5  I have here today with regard to the overall fairness and

6  acceptability of the settlement.

7          Accordingly, merely to summarize here without never

8  to be complete because the findings of fact and conclusions of

9  law obviously will be in greater depth, the Court certifies

10  the class that has been tendered here as an appropriate

11  settlement class, approves the settlement in all its aspects

12  and awards counsel fees of $22.5 million from the $90 million

13  settlement fund, plus the $1 million in expenses also sought.

14          As you know, my tenure on this bench is limited to

15  another nine days and for that reason, I would like to have

16  proposed findings of fact and conclusions of law and any

17  objections to them submitted promptly. I would ask that the

18  plaintiffs and defendants, particularly since you have a

19  sizable familiarity with this matter, submit proposed findings

20  of fact and conclusions of law, as well as proposed finding

21  order or orders as the case may be, electronically filed with

22  the Court by the close of business on this coming Wednesday;

lancaster82205
23  that any objections from any corner either to form or content

24  of those papers shall also be electronically filed no later

25  than 12 noon on this Friday.  That will give the Court the


JOANNE M. CARUSO, CSR, CRR,  OFFICIAL COURT REPORTER, NEWARK, N.J.

46


1  opportunity to review those papers over the weekend and

2  presumably execute them with the proper terms the first of

3  next week.

4          Anything further before we adjourn on behalf of the

5  plaintiffs?

6          MR. HARWOOD:  Your Honor, we have the approved order

7  approving settlement and the judgment.  If your Honor pleases,

8  I can hand these up now.

9          THE COURT:   If you would hand those up now, and I

10  know I've seen them in various forms along the way.  I'm happy

11  to receive them and I can stop my inquiry.

12          MR. HARWOOD:  Paragraph 16 of the order approving the

13  judgment deals with attorneys' fees and there are appropriate

14  blanks in there.

15          THE COURT:   Fair enough.  I can complete them.

16          Anything further on behalf of defendants?

17          MS. ASHTON:  No, your Honor.

18          THE COURT:   Anything on behalf of other counsel?

19          MR. VESELKA:  No, your Honor.

20          MR. BETTIGOLE:  No.

21          MS. SENNETT:  No.

22          THE COURT:   We're adjourned.

23          (Matter concluded.)

24

Page 43

lancaster82205

25

JOANNE M. CARUSO, CSR, CRR,  OFFICIAL COURT REPORTER, NEWARK, N.J.